Turner v. Davis.

---

TURNER v. DAVIS.

[MAY TERM, 1883.]

1. CHANCERY PRACTICE: *Demurrer to Complaint erroneously sustained in part*:

When a demurrer is sustained to a complaint in equity solely for the

Turner v. Davis.

want of proper parties, the complaint should be dismissed if the plaintiff refuses to amend with the necessary parties; but, if it be also erroneously sustained for want of equity, the plaintiff may stand upon his complaint and have this error corrected in the supreme court without first amending as to parties.

2. EQUITABLE CONVERSION: *Construction of deed :*

W and Q claiming certain lands by descent from the same ancestor and desiring to end pending litigation for them, and to convert them into money and divide it between them, jointly conveyed them to a trustee to sell and divide the proceeds of the sales between them, after allowing to the trustee a reasonable commission for selling, etc. The deed provided that the trustee should convey to whomsoever the grantors should in writing request. "Provided, however, that the price should be fixed by the grantors, and should be fully paid or secured." The trustee also executed the deed accepting the trust and covenanting for its faithful performance. Afterwards D, a judgment creditor of W, had his interest in the lands sold under an execution at law to satisfy his judgment. T, another judgment creditor of W, filed his complaint in equity to set aside this sale and for sale of W's interest by a commissioner of the court for payment of his judgment. *Held:* That the deed of trust was an equitable conversion of the land into money and left no estate in W which was subject to execution at law. His interest could be subjected to his debts only in chancery.

3. EXECUTION: *Interest in proceeds of land not subject to.*

One entitled to the proceeds of the sale of land has no interest in the land subject to execution at law. The judgment creditor's remedy is in chancery.

APPEAL from *White* Circuit Court in Chancery.

Hon. J. B. SMITH, Circuit Judge, on exchange, &c.

*J. M. Moore* for appellant.

Watkins had no interest in the property prior to the execution of the deed of trust. It was an ancestral estate, coming to his child by her mother's side, and on her death went to her next of kin on the mother's side. *15 Ark., 555; 27 Ark., 65; 34 Ark., 564.* He had no curtesy, because there was no such possession in him or his wife during the coverture as would give curtesy. *15 Ark., 466; 3 Hill, N. Y., 186; 5 Cowen, 98; 6 Mon. 175; 1 How., 37; 10 B. Mon., 48.* The only interest he had was cre-

ated by the deed of trust, and that vested in him no title to the land. It gave him only an interest in the *proceeds of the sale*. The conveyance was absolue *to sell*. It was subject to no defeasance. There was no equity of redemption, nor any other interest subject to execution at law, and the sale under execution was void. *Petit v. Johnson, 15 Ark.*, 55; *Turner v. Watkins, 31 Ark.*, 428–437; *McIlvane v. Smith, 42 Mo.*, 45; *Presley v. Rogers, 24 Miss.*, 520; 4 *Bing.*, 96; 17 *John*, 351; 18 *Wend.*, 236; 10 *Paige*, 567; 3 *Paige*, 481–2; *Brown v. Graves, 4 Hawks*, (*N. C.*), 342; 2 *Blackford (Ind.)*, 431; *State v. Lawson, 6 Ark.*, 269.

By filing this bill appellant acquired a lien on the lots and land, and a priority over Davis & Bro. *Kimberly v. Hartley, 1 McCrary*, 136; *Jones, McDowell & Co. v. Ark. Ag. M. Co., 38 Ark.*, 17.

*Compton, Battle & Compton* for appellees.

Watkins had such an interest in the property as under the laws of this State was subject to sale under execution. *Gantt's Dig., sec. 2630; Perry on Trusts, secs. 520, 521, 321; Burgess v. Wheat, 1 Eden, 226; Reid v. Gordon, 35 Md., 184; Campbell vs. Preston, 22 Gratt., 396.*

EAKIN, J. The bill in this case was dismissed after a demurrer had been sustained and the complainant had rested.

It shows that about the year 1852 James Walker died intestate, leaving a large amount of real estate in several parcels, consisting of plantation lands and town lots. About the year 1858 his descendants had all died, except a granddaughter, Emily Sophronia Quarles, in whom all his real estate had vested, subject to a right by curtesy to one-half in Thomas Watkins, who had married one of Walker's three children, after a brother had died childless.

Watkins, however, was claiming a larger estate as de-

rived through deceased children, by his deceased wife, and had much of the property in his possession, and a suit to recover it by Quarles and wife was then pending. The parties litigant, "desiring," as the bill alleges, "to convert the same into money, and divide the said money between them," on the twenty-ninth of December, 1858, conveyed each, their several interests to a trustee, William G. Turner, to be sold by him, (excepting specified portions) in order that the proceeds might be equally divided between said Watkins and Emily, after deducting a reasonable commission to be allowed the trustee.

The deed itself, which is exhibited and prayed to be taken as part of the complaint, sustains the allegations, and further explains them. The exceptions from the general power of sale consist: First, of a tract of land on Little Red river, on which Watkins resided, and which the trustee was directed to convey to him on his paying one-half the value to Quarles and wife, the time and mode of payment being prescribed ; and second, of a certain tract which Mrs. Watkins in her lifetime had agreed to sell to Joshua W. Stamps, and for which she had received a portion of the purchase money. Upon payment of the remainder the trustee was directed to convey to Stamps, and divide the proceeds equally between the parties, deducting from the share of Watkins the payments made to his wife, so that Quarles and wife should have a full half of the whole proceeds. For the rest it was provided that the trustee should convey the whole or any part of it to whomsoever the grantors might request, in writing, "provided, however, the price shall be fixed by the parties of the first part, and the same shall be fully paid or secured "—the proceeds to be paid equally to Watkins and to said Emily as her separate property. The trustee joined in the deed, accepting the trust and covenanting with the grantors well and truly to execute its provisions.

On the twenty-third day of February, 1872, the firm of Davis & Bro. recovered a judgment for near $1300 against Watkins, and had the execution levied on the half interest of Watkins in certain lots and blocks in the town of Searcy, a part of the estate left by James Walker. They are de-scribed as block No. 2; lots numbered from 3 to 10, inclu-sive in block No. 11; lots numbered from 1 to 10 in block No. 13; lots numbered from 6 to 10 south of Spring Square, and blocks numbered 15 and 21 in Watkins' and Quarles' addition. At the sale under this levy defendant, Marcellus Davis, became the purchaser of all the property for $1175, and afterwards on the twenty-second day of March, 1876, conveyed it to James W. Brooks, who after-wards on the seventeenth day of July, 1876, conveyed it to defendant, E. Scottie Davis, wife of said defendant, Mar-cellus.

Meanwhile the complainant Turner, had himself become a large judgment creditor of Watkins, by virtue of several judgments, either recovered by himself or obtained by as-signment. One for $800 dollars on the twenty-ninth of Sep-tember, 1873; one for $235 on the thirteenth of August, 1875, and one for a small balance on the fifth of Febru-ary, 1875. Upon the first two, executions had been issued and returned unsatisfied, and the first had been revived by *scire facias* on the thirtieth of July, 1877.

With regard to two of the blocks levied upon, to-wit: Numbers 15 and 21 in Watkins' and Quarles' addition, it is shown that at the time of the levy, Watkins had the whole interest, and not the undivided half alone, in them, or their proceeds when sold, arising thus: In 1859, Quarles and wife conveyed to complainant all their interest in the N. W. ¼ of Sec. 11, T. 7, N. of R. 7 W., a part of the Walker lands adjoining the town of Searcy, which the trustee, with the assent of Quarles and Watkins, had laid off in town lots. Afterwards, complainant and Watkins, to

sever their interests, made partition by interchange of deeds, whereby the whole interests in those two blocks became vested in Watkins. As to the other lots and blocks, there has been no division of the interests of Watkins and Mrs. Quarles, nor does the bill disclose anything to indicate a reconversion.

The complaint further states that Walker owned an undivided half of what is called Spring Square, in said town, of which, when sold, Watkins is entitled to a half of the proceeds, or a fourth interest in the whole square.

Neither Watkins nor his wife has, at any time, been in the actual possession of any of the lots mentioned in the complaint. They remain vacant and unoccupied.

Prayer that the deed under the execution sale be annulled; that a commissioner be appointed to sell the undivided half of said lots and blocks, and apply the proceeds to the satisfaction of complainant's judgments with costs and for general relief. The bill was filed on the seventh of December, 1878, against Davis and wife, Watkins and the trustee. Complainant appeals from the judgment of the court sustaining a demurrer to his bill.

### OPINION.

There were five grounds of demurrer. The first three were all to the effect that no equities were shown. The fourth was, that the complainant failed to show an offer to redeem; and the fifth was the want of proper parties defendant. The demurrer was sustained upon *all* the grounds. It was certainly well sustained as to the last. If the principles upon which the complainant rests his right can be sustained, and are applicable to the facts, it will follow that Quarles and wife are necessary parties. They are interested in the sales, through which, only, a court of chancery could afford remedial justice. The land, under the agreement, could not be sold by moieties.

1. CHANCERY PRACTICE: Demurrer erroneously sustained in part. Appeal.

But, if the chancellor erred in sustaining the demurrer as to the grounds which question the intrinsic equities of the complaint, no offer on complainant's part to amend by bringing in other parties could have been of any avail to cure that error. He was not required to do a vain thing, and to dismiss his bill because he did not do so, would be but a continuation and consummation of the error in sustaining the demurrer for want of equity. If want of sufficient parties had been the only and specific ground upon which the demurrer was sustained, then, if the complainant had refused to bring in the necessary parties on being thus advised, the bill should have been dismissed. But, in this case, his declining to amend, as to parties, was no waiver of the errors, if any, in sustaining the demurrer on other points.

It was just as clearly error to sustain the demurrer on the fourth grounds: that complainant did not offer nor attempt to redeem. If Mrs. Davis took anything through the execution and sale, she has the right to hold it. If it vested nothing in her, there was nothing to redeem. This brings us to consider whether there was any intrinsic equity in the bill; and that depends upon whether Watkins, when the execution of Davis was levied, had any interest in the land itself subject to the execution at law; and, if so, what.

We cannot go behind the agreement to ascertain the interest of Watkins. It is a matter of no consequence whether he had curtesy or had nothing. It was a family contest concerning lands descended, between parties claiming antagonistic interests. The agreement stands on the ground of family settlements, which are as much encouraged and favored in equity, as purchases and sales of common inheritance amongst the co-heritors are suspected and guarded. In the latter, there is every temptation to undue advantage, and *uberrima fides* is exacted, The former are

for peace and harmony amongst relations. They are supposed to be the result of mutual good will, and imply a disposition to concession for the purpose, regardless of strict legal rights ; always excepting cases of fraud, of which nothing, in this case, appears.

It does not appear that the agreement interfered with any liens ; and the rights of both Watkins and Quarles' wife must be determined by it, as well as those of all the world claiming under or through them. The very kernel of this controversy then, is, did Watkins have an interest which an execution would take ?

The compromise was not for a division of the real estate, as such, with a view of holding it as tenants in common. This is apparent on its face and from the nature of the provisions. For such a purpose no trustee was necessary ; nor was it at all important that they should, for purposes of divisions of interests in the land, and of conceding equality in its ownership, have resorted to the device of raising equitable estates instead of such legal ones in the moieties, as they might have made by indentures. There was no indication that either party was willing to concede to the other, the enjoyment of the property itself—that is, the *corpus* of it, by possession, or pernancy of rents and profits ; but rather that both parties desired the sale and conversion of the property into money. This could not be effected well without a sale of the whole, as half interests are not so marketable. If a legal or equitable estate to a moiety had been created, the manifest object of the compromise would have been defeated, because, in such case, neither could have had a sale of the whole, *in invitum* as to the other, without the inconvenience and expense of a bill of partition and a further disadvantage of a forced sale at auction, on fixed terms, instead of the more advantageous sales which might be effected privately upon more flexible terms, and by taking advantage of the state of the land market. Evi-

dently, the effect of the agreement and its manifest intent was to secure to each the right to have reasonable sales made, that the property might be converted into money. *Leading Cases in Equity,* 4 Am. Ed., Vol. 1; part 11, p. 1153.

It does not conflict with this that the trustee was to make conveyances at the request of the parties. This was to secure the performance of his duty. It is an ordinary clause in imperative trusts to be executed for the benefit of others, and does not necessarily make a condition precedent. This is well reasoned and settled by Sir William Grant, M. R., in *Thornton v. Healey,* 10 Vesey, Jr., 129, which is a much stronger case than this. It was a case where bank annuities were conveyed to a trustee for making a jointure and provision for children ; and it was provided that the trustee, *upon the request* of husband and wife, should sell the annuities for such reasonable price as could be got ; and " *with the consent and approbation*" of said husband and wife, should invest in real estate, to be settled upon certain limitations. It was held that the money was converted into land by the mere force of the deed itself, in whatever shape it might afterwards be found, or in whosesoever hands ; and that with regard to its devolution and the rights of parties to enjoy it, it was to be treated as land. The master of the rolls said : " There is no weight in the circumstance that the property is *found* in the shape of money or land, for the *character* is to be found in the deed." With regard to the request, he says : "Nothing is more common than to direct money to be laid out upon request. The object of that is only to insure that the act shall be done when the request is made, not to prevent it until request." The request was held not to be a condition precedent. It is to be remarked in that case, also, that the clause providing for the *consent and approbation* of the husband and wife to the particular investment in land did not prevent the application of the doctrine

of conversion. The main object of the settlement seems to have been regarded as controlling; that is, that the sale should be made and realty purchased. This made the conversion. The matters of request and consent were regarded as incidents, or steps, for a fair accomplishment of the end in view. To the same effect is *Lechmere v. Earl of Carlyle, 3 P. Wms., 218.*

Of course, each instrument in any case must be construed upon its own face ; and there may be, and have been, cases in which requests and consents have been held conditions precedent to conversion. But there are cases where it clearly appears, by negative words, such as "not without," and from the nature of the other provisions that it was not the intention of the parties that the conversion should be made without the condition ; that is, where it appears that the parties contemplate the alternative of no conversion. Such were the cases of *Davies v. Goodnew, 6 Sim., 585,* and the *Matter of Taylor's Settlement, 9 Hare, 596.* In the former case, Vice Chancellor Shadwell said that "in every case in which the question has been whether the property, which was the subject of the suit, ought to be considered as real or personal estate, the court has *ascertained the intention* of the parties on that point, and has decided accordingly." I think there can be no doubt in this case, from the terms of the instrument, that both parties, desiring to convert the land into money, and to close litigation, contemplated a sale and division of money as to all the estate of Walker, save the excepted portions, as a thing to be accomplished to effectuate the end, and that each party looked to *the fund* as the result and outcome of the arrangement without desiring or expecting to enjoy the land *as such.* There were special provisions made for such lands as Watkins desired to keep, and nothing to indicate that either party expected to use any other of the lands in kind.

Some slight doubt, but only slight, as to whether or not

the agreement amounted to a conversion, may arise from the provision that the parties interested should agree upon the price. A little reflection makes it clear that this was intended rather as a guide to the trustee than as a condition precedent. It would have converted the compromise into a hollow mockery to have made a sale *absolutely* dependent upon the concurrence of both parties in the price. For what, then, could either take, if the other should become perverse and refuse to assent to any price? They would not become tenants in common equally, for neither conveys anything to the other, or to the trustee to hold for the use of the other. The conveyance is merely to sell, and if either may unreasonably defeat the sale, the rights of both are left worse confounded than before. Courts of equity lean strongly to the support of family compromises, not to defeat them. In the case of *Lechmere vs. The Earl of Carlisle* (*supra*), speaking of a case where a purchase of land was to be made with the consent of husband and wife, Sir J. Jekyle, M. R., said, with regard to conversion, that "such a clause made no difference, for, upon a convenient purchase being proposed, the court would have taken on themselves to judge thereof, and, without some reasonable objection, would have ordered the money to be laid out in it." The same remedy might be applied to an unreasonable refusal to agree upon a price.

If there was no conversion by the compromise and deed, then, by law, there would be a resultant trust, and each would hold his old interest, with all its uncertainty, until a sale by consent of both; and if that consent could not be coerced, if unreasonably withheld, the uncertainty would continue indefinitely. For, by the terms of the deed, their estates in the lands are not changed as regards each other. Nothing at all is conveyed from one to the other, but every thing each has in the subject matter is conveyed to a third party in trust, not to allow the *cestuis* to take the

rents and profits, and hold the lands equally, as tenants in common, but for the special purpose of selling for division, and dividing the money. It would have been but an empty form to have executed the deed with such views. It would have sufficed for Quarles and wife to have conveyed to Watkins all their interest in the Red River place, reserving a lien for half value; to have joined in confirming Stamps' title, and there to have let the matter rest, with the intention of amicably joining in a conveyance upon any future sale of any part for division. Where was the use, in this view of the case, of the machinery of a trust, or any compromise at all. If the sales are to be always by mutual consent, and each may prevent it arbitrarily, what does the compromise effect?

We have seen that the question of conversion depends upon the deed, whether actually carried into effect or not. Delays do not of themselves work re-conversion, so as to restore the natural character of the property, unless there be some act of the parties entitled, to show an intention to take as land or money—to take it in its original and not its changed character. Whether or not there had been any enjoyment of the lands by the parties, as tenants in common, sufficient to manifest an intention to re-convert the land into its original character, is not shown by the bill. With regard to the lots in question, it is said they are vacant and unoccupied, which would explain any mere delay without any presumption of re-conversion.

We are thus irresistably led to the conclusion that the lands had in equity been converted into money, and that when the execution of Davis & Bros. was levied there was no estate in the land, legal or equitable, belonging to Watkins, except the two blocks in Watkins' and Quarles' addition, as to which the bill itself shows that there had been a re-conversion by consent and joint action. Referring again to the case of *Lechmere v. Earl of Carlisle*, (*supra*), we find

Turner v. Davis.

the master of the rolls saying : "The forbearance of the trustees in not doing what it was their office to have done, shall in no sort prejudice *cestuis que* trust; since, at that rate it would be in the power of trustees, either by doing or delaying to do their duty, to affect the right of another person, which can never be maintained." The maxim that equity will consider that as *done*, which *ought* to have been done is of very general application. It is plain enough that equity will apply the rules governing real or personal property to a particular piece or fund in accordance with what its value *should* be, rather than with its nature as found.

3. EXECU-TION:
Interest in proceeds of sale of land gives no estate in the land
A person entitled to the *proceeds* of lands directed to be sold has no *estate* in the land, whatever; only an equity to be enforced against the trustee, or other person wrongfully detaining his share of the proceeds. The interest is so entirely in the nature of personal estate, that where aliens are incompetent to hold realty they may take it. There is left no such interest in the land itself as can be bound by a judgment lien or touched by an execution. See, upon all these points, the authorities collected in the American notes to *Fletcher v. Ashburner, in White, and Tudor's Leading Cases, vol. 1, part 11*.

The equitable doctrine of conversion has been fully adopted in many of the American states, and expressly repudiated in none. Arkansas is amongst those in which it can no longer be questioned. In *Loftis v. Glass, Ex'r, 15 Ark. 680*, where lands had been directed by will to be sold and the proceeds divided amongst heirs, at a future day, this court held that "even before the sale was made, the lands would have been regarded in equity as the personal estate of the devisee or legatee, upon the established principle, that money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as the species of property into which they are to be converted." In that case it was held, that

land, directed to be sold, had so acquired the character of personalty, that there was no such interest left in the persons entitled to the proceeds as would descend to heirs— their only right being to the proceeds, as personalty.

There being no interest in the land, considered as land, it Remedy is logically follows, that a creditor of one entitled to the pro- in equity. ceeds, mistakes his remedy by levying upon the land itself. Everything substantive eludes his grasp. His proper course is to pursue the proceeds, and to take steps to have them realized ; which is within the power of a court of equity. Otherwise, he would have it in his power to compel his debtor to elect to take the land in its natural character against his own wishes, and against the will of his beneficiaries, who are entitled to have the whole interest in the land sold at once, at the best rates, for division of proceeds ; in other words, to compel the debtor to do what he has no right to do.

I do not conceive that our statute regarding property subject to execution touches the question. It provides that "all real estate, whether patented or not, whereof the defendant, or any person for his use, was seized in law or equity on the day of rendition of the judgment, order or decree whereon execution issued, or at any time thereafter." What this may really mean has not been clearly defined by any decision of this court. The clouds have been cleared from some prominent peaks, but much intervening landsscape lies in obscurity. This is well illustrated by the opinion of the court, delivered by Justice Walker, in *Turner v. Watkins, et als.*, compared with the dissenting opinion of Chief Justice English—the former holding that the interest of one who had made a deed of trust with power of redemption, was liable to execution, although not so, if the power of sale given were absolute and irrevocable, even if the grantor might be entitled to the surplus. Beyond this the court expressly declined any attempt to draw the

Turner v. Davis.

distinction (and doubts if it can be clearly done) between such equitable estates as may or may not be taken in execution.    The chief justice, arguing very forcibly from former decisions, contended that although there might be a right of redemption, this contingent right was *not* the subject of execution ; adopting the reasoning in *Petit v. Johnson* that the sale of an interest in every respect so uncertain, would in most cases be injurious to the debtor, and but little advantageous to the creditor.    It is pretty clear that *upon the decisions*, the chief justice was right.    The opinion of the court so far recognized the former authority of *Petit v. Johnson* as to hold *arguendo*, that a provision for a return of surplus proceeds of the sale to the grantor in the deed of trust would not leave any interest in the land itself which could be reached by execution.    It is difficult to see how such a concession can stop short of this case, where a sale was contemplated without power of redemption, and each party was entitled to a share of the resultant proceeds.    Under the statute it has always been held that there may be *some* equitable interests springing from land, which are not liable to execution, although they have never yet been classified.    A right to a portion of the proceeds is one of them.

I think, however, the statute has no application ; for a conveyance wholly for sale, without defeasance, does not make the trustee seized of the *land* in any sense, in law or in equity, for the use of the persons entitled to the process.    He holds the *proceeds* for their use as money and has the land for the purpose of executing the trust.

We think, *upon the facts in the bill*, it appears that the execution sale under which Mrs. Davis holds, carried nothing but the two blocks in the addition ; that the trust remains unexecuted, and that the right of Watkins to the proceeds of the sales when made can be reached through a court of equity which may devise a proper scheme for the execution of the trust, so as to carry out the intention of

the parties to the compromise; compelling such assent as ought in fairness and reason to be given, or upon its being withheld, acting with regard to the property and its disposition, as a sense of justice and right may dictate. What the true equities may be shown in the end to be, upon answer and proof, we cannot anticipate, but the complainant should have an opportunity of sustaining his bill. Although there were not proper parties defendant, and the court did not err in sustaining the demurrer on that ground, yet it did err in sustaining it upon the ground of the want of equity. As that could not be cured below by amendment as to parties, it would have been nugatory to make them, and the court erred in dismissing the bill. The complainant could proceed no further without allowing his bill to be dismissed and appealing.

Reverse the decree, and the order sustaining the demurrer upon all the grounds, and remand the cause with directions to sustain the demurrer upon the ground of want of parties alone, and to overrule it upon the ground of want of equity shown, and for such other proceedings as may be consistent with this opinion and with the principles and practice in equity, with leave to amend as to parties.

SMITH, Justice, *dubitante*.