HELEN S. SAYLES, Appellant, *v.* GEORGE F. BEST et al., as Executors, etc., Respondents.

Where a power to sell real estate is given to executors after the expiration of a life estate, or when the youngest child becomes of age, with a direction to divide the proceeds equally among the testator's legal heirs, the heirs take the fee of the remainder subject to the execution of the power of sale; and upon the recovery of a judgment against one of them before the time arrives when the power can be executed, the judgment creditor acquires a lien upon the heir's interest in the land, which follows and attaches to his interest in the proceeds, when a sale is had under the power.

B. died in February, 1878, leaving a will by which he devised his homestead farm to his widow for life; upon her death his executors were empowered to sell the same and divide the proceeds equally among his heirs. Said executors were empowered to rent another farm until the youngest child of the testator became of age, and then to sell and divide the proceeds as above. Two judgments were recovered against A., one of the testator's sons, in 1877 and 1878. In 1884 A. executed a conveyance of all his interest in his father's estate, and in 1887 executed another. The widow died and the youngest child became of age in 1887. Thereafter, in that year, A.'s interest in the two farms was sold upon executions issued on said judgments, and was purchased by the judgment creditor. In 1888 defendants, as executors, sold both farms and received the proceeds, and then rendered a final account, whereon

the surrogate entered a decree adjudging that A. had no interest in the property, but that his grantees were entitled to his share, which was accordingly paid to them. In an action by plaintiff, as assignee of said judgments and of the interest purchased on sale under the executions, to recover the share of A., it appeared that one of the defendants knew, in 1879, of the existence of the judgments, and that plaintiff was not a party to the proceedings for accounting. *Held,* that upon the death of B., A. became seized of an estate in remainder in an undivided share of the homestead farm and of an estate in fee in a similar share of the other farm, subject to be defeated by the exercise of the powers of sale (1 R. S. 730, § 59); that the estate in both farms was alienable (1 R. S. 725, § 35), and so was subject to the lien of the judgments and to sale under executions thereon; that the sales in execution of the powers extinguished the estate which A. had in the land, and the rights of all the parties interested therein were transferred to the fund; that the sale on executions made no change in the relative rights of the parties; that plaintiff's presence on the accounting was not necessary to confer juris-diction upon the surrogate, and his right or interest in the fund was not affected by the decree, the sole effect of which was to discharge the executors from further responsibility as custodians, and to transfer the fund with plaintiff's lien thereon unimpaired; that defendants owed no active duty to plaintiff beyond the faithful discharge of their duties as executors, and these were performed when they brought the fund into the Surrogate's Court intact, and disposed of it in accordance with the decree; and, therefore, that the action was not maintainable.

(Argued November 28, 1893; decided December 12, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made November 22, 1892, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiff against defendants, as executors of Peter K. Best, deceased, to recover a portion of the money received by them upon a sale of real estate of said testator, being the share of the testator's son Alfred, plaintiff claiming the same as assignee of a judgment against him.

Peter K. Best died February 17, 1878, leaving a will, by which he devised his homestead farm in Stillwater, Saratoga county, to his widow during life, and after her death he empowered his executors to sell the same at public or private sale at such time, upon such terms and in such manner as to

them should seem meet and to the best interest of his estate, and to divide the proceeds therefrom equally among his legal heirs, share and share alike. He directed and empowered his executors to rent another farm upon which his son Jacob then lived, from year to year, until his youngest child became twenty-one years of age and then gave them the same power to sell and divide the proceeds as in the case of the homestead. He appointed his widow and the defendants Jeremiah I. and Tristram C. Best, executors. The youngest child became of age March 21st, 1887, and the widow died August 25th of the same year. The plaintiff is the owner of two judgments recovered against Alfred E. Best, one of the testator's sons, in 1877 and 1878, upon one of which execution was issued and the interest of the judgment debtor in these two farms sold September 29th, 1887, and the judgment creditor became the purchaser, and the usual sheriff's certificate of sale was executed to him and filed and recorded in Saratoga county clerk's office October 7th, 1887. The sheriff's deed upon the sale was delivered December 31st, 1888, and recorded January 16th, 1889. The defendants, as executors, executed the power of sale given them in the will on April 2nd, 1888, and sold both farms and received the proceeds, amounting to $22,700, of which the share of Alfred E. Best was $2,245. On March 6th, 1884, Alfred executed to Edward T. Williamson a conveyance of all his interest in the property which came to him under the will of his father, which deed was recorded April 7th, 1884. Alfred was indebted to his father in his lifetime upon two notes given in 1873, amounting to $2,200 and interest, which passed to the widow under the will, and were held by her at the time plaintiff's judgments were recovered. On October 12th, 1887, Alfred executed to the executor of his mother's will a conveyance and assignment of all his right, title and interest in the estate of his father. The defendant Tristram C. Best knew of the existence of the plaintiff's judgments on April 30th, 1879, but he had no personal notice of the sheriff's sale and deed; and the defendant Jeremiah I. Best never had any personal knowledge or infor-

mation in regard to the judgments until after the sale by the
executors and the distribution of the proceeds.   In April,
1888, the executors rendered a final account before the surro-
gate of Saratoga county, and such proceedings were had that
a decree was entered by the surrogate May 29th, 1888, adjudg-
ing that Alfred had no interest in the property, and that Wil-
liamson and the executor of Jane E. Best were entitled to his
share as grantees and assignees, and adjudging the amount
which should be paid to each, which was immediately there-
after paid over to them by the executors as directed by the
decree.   February 25th, 1889, the plaintiff demanded of the
defendant Tristram C. Best the share of Alfred in the pro-
ceeds of the sale of the real estate, which he neglected to pay,
and on March 1st, 1889, plaintiff brought this action against
both executors individually, in which he demanded judgment
for the sum of $2,245, the amount of Alfred's share received ·
and distributed by them.   The cause was tried before the
court without a jury, and upon findings embodying the facts
here stated the complaint was dismissed upon the merits.
The plaintiff has appealed from a judgment of the General
Term affirming the judgment entered upon the decision of
the trial court.

*E. F. Bullard* for appellant.  ·  No title vested in the execu-
tors under the will of Peter K. Best.   It vested in the devisees
subject to the power of sale.  (1 R. S. 728, § 49; Edm. ed.
677; *Cook* v. *Platt*, 98 N. Y. 35; *Weeks* v. *Cornell*, 104 id.
325; *Wilson* v. *White*, 109 id. 59; *Henderson* v. *Henderson*,
113 id. 1.)   The judgments were a lien on the share of Alfred
E. Best.  (Code Civ. Pro. §§ 1251, 3343, subd. 6; *Despard*
v. *Churchill*, 53 N. Y. 199; 50 id. 655; *Wilder* v. *Ranney*,
95 id. 7.)   After the sale by the executors the lien and title
thereunder attached to the proceeds of sale.  (*Ackerman* v.
*Gorton*, 67 N. Y. 63; *Dominick* v. *Mitchell*, 4 Sandf. 399;
Code Civ. Pro. § 758; *F. N. Bank* v. *Lent*, 10 N. Y. Supp.
261; *Piper* v. *Poppenheim*, 43 N. Y. 68.) · The decree of
the surrogate, so far as it attempts to deprive the plaintiff of

his right of property without notice, is void under the Constitution. (Code Civ. Pro. § 2742; *Hood* v. *Hood*, 19 Hun, 300; *Van Rensselaer* v. *Van Rensselaer*, Id.; 113 N. Y. 207.) If the share of Alfred be considered as personal then supplementary proceedings would bind it. (*Bingham* v. *Disbrow*, 37 Barb. 24; *McCorkle* v. *Herman*, 47 N. Y. 297.) There was no equitable conversion because the power to sell was not imperative but discretionary. (*In re Fox*, 52 N. Y. 530; *Henderson* v. *Henderson*, 113 id. 1; *Garley* v. *Campbell*, 66 id. 169; *In re Bingham*, 127 id. 297; *Drake* v. *Paige*, Id. 562; Gerard on Tit. 363; *Morgan* v. *Kohnstam*, 60 How. Pr. 161; *Prentice* v. *Janson*, 78 N. Y. 486; 66 id. 169; 95 id. 7.)

*Charles S. Lester* for respondents. The power of sale given to the executors by the will of Peter K. Best, being valid, as assumed by the complaint which proceeds in affirmance thereof, and no discretion given to the executors except as to the time and manner of sale, operated as an immediate conversion of the real estate, and the distributees took their interests as money and not as land. (*Stagg* v. *Jackson*, 1 N. Y. 206; *Lent* v. *Howard*, 89 id. 169–177; *Dodge* v. *Pond*, 23 id. 69; *Harris* v. *Strodl*, 132 id. 392; *Tillman* v. *Davis*, 95 id. 17; *Henderson* v. *Henderson*, 113 id. 1; 1 Washb. on Real Prop. 9, § 34; *Meakings* v. *Cromwell*, 5 N. Y. 136; *Craig* v. *Leslie*, 3 Wheat. 563; *Horton* v. *McCoy*, 47 N. Y. 21; *Fisher* v. *Banta*, 66 id. 468; *Germond* v. *Jones*, 2 Hill, 569; *Kearney* v. *M. Society*, 10 Abb. [N. C.] 274, 278; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424, 431; *Robert* v. *Corning*, 89 id. 239; *Kane* v. *Gott*, 24 Wend. 641; *Elliot* v. *Fisher*, 12 Sim. 505; *Griffith* v. *Sunell*, 7 Hare, 299; *Anstice* v. *Brown*, 6 Paige, 448; *Seymour* v. *Freer*, 8 Wall. 202; *Hatch* v. *Bassett*, 52 N. Y. 359; *Hood* v. *Hood*, 85 id. 561; *Wells* v. *Wells*, 88 id. 323; *Marsh* v. *Wheeler*, 2 Edw. Ch. 156.) The accounting by the executors and the surrogate's decree are conclusive against the plaintiff. (*Stagg* v. *Jackson*, 1 N. Y. 206; *Duncan* v. *Guest*, 5 Redf. 540;

*Moyer* v. *Hinman*, 13 N. Y. 180, 184; *Simon* v. *Schurck*,
29 id. 598; *Lounsbury* v. *Purdy*, 11 Barb. 490.) The
order made by Judge Crane, June 28, 1879, appointing Aaron
B. Olmstead receiver of the property of Alfred E. Best, was
void. (*Ashley* v. *Turner*, 22 Hun, 226; *Dorr* v. *Noxon*, 5
How. 29; *Barker* v. *Johnson*, 4 Abb. Pr. 435; *Andrews* v.
*G. W. Co.*, 11 Abb. Pr. [N. S.] 79; *Morgan* v. *Von Kohn-
stamm*, 60 How. Pr. 161; *Grant* v. *Warner*, 51 Hun, 53;
*Whitney* v. *Welch*, 2 Abb. [N. C.] 442; *Field* v. *Ripley*, 20
How. Pr. 26.) Even if the orders made in these void sup-
plementary proceedings were valid they could only affect prop-
erty in their possession at the time of the order. (*McGivney*
v. *Childs*, 41 Hun, 607; *Caton* v. *Southwell*, 13 Barb. 335;
*Potter* v. *Low*, 16 How. Pr. 549.)

MAYNARD, J. Upon the death of Peter K. Best in 1878,
his son Alfred became seized of an estate in remainder in the
equal undivided twelfth part of the homestead farm, liable to
be defeated by the exercise of the power of sale by the execu-
tors. (4 R. S. [8th ed.] p. 2439, § 59.) With respect to the
other farm the situation was different. No precedent estate
in it was given to any one and no valid trust estate created in
the executors. The utmost that can be said is that a power in
trust was given to the executors to rent the lands until the
youngest child became twenty-one, and then to sell and divide
the proceeds among the heirs. (Id. § 58.) It follows, there-
fore, that immediately upon the death of the testator the son
became vested with a present estate in fee to the undivided
one-twelfth part of this farm, subject to the execution of the
power in trust. His estate could not be defeated until the
youngest child became of age, when the executors were
authorized to sell and distribute the proceeds. The estate
which Alfred had in both farms was descendible, devisable
and alienable in the same manner as if it had been an estate
in possession. (Id. § 35.) It was consequently subject to the
lien of any judgments that might be recovered against him
while it continued, and to sale under execution thereon, and

the purchaser would take the estate which he held and succeed to whatever rights he had in the property. (Code C. P. §§ 1251, 3343, sub. 6.) It must then be held that the plaintiff acquired a lien as a judgment creditor upon the estate which Alfred had in these farms by the judgments recovered against him in 1877 and 1878. The deed from Alfred to Williamson in 1884 conveyed this estate to the grantee, subject to the lien of the plaintiff's judgment. The power of sale became operative as to the homestead farm June 25th, 1887, and as to the other farm March 21st, 1887, and the subsequent execution of the power on April 2nd, 1888, became effective as of these dates respectively to extinguish the estate which Alfred had in the land, and resulted in an equitable conversion of the land into money as of the times when the power might have been exercised, and thereafter the rights of all parties interested in the estate which Alfred had in the land were transferred to the fund, including the lien of the plaintiff's judgment. The sheriff's sale on execution, September 29th, 1887, made no change in the relative rights of the parties to this action, inasmuch as the judgment creditor became the purchaser, and it was over-reached by the subsequent execution of the power of sale.

On May 29, 1888, when the executors had their final accounting, the legal situation may be thus summarized: The executors had in their hands a fund of $2,245, which represented the share to which Alfred was originally entitled in the testator's real property; the plaintiff had a lien upon the fund for the amount of his unpaid judgments, and Williamson and another had the legal title to the fund by transfer from Alfred subject to the lien of plaintiff's judgments. In a proceeding instituted by the executors in conformity to the statute, and to which all persons were presumably made parties whom the law required to be cited, the surrogate on that day directed the executors to pay over this fund to the grantees of Alfred, which decree the executors obeyed. The plaintiff was not a party to this proceeding, and the Code did not require his presence in order to confer jurisdiction upon the surrogate to

make the decree, and his right to or interest in the fund was not affected by the decree. So far as he was concerned its sole effect was to discharge the executors from all further responsibility as custodians of the fund and transfer the fund into the possession of Williamson and the executor of Jane E. Best's estate. Whatever lien he had on it in the hands of the executors remained unimpaired by the change of possession, and whatever remedies the law authorized him to adopt for the purpose of enforcing his lien were available to him after the payment of the money to the judgment debtor's grantee to the same extent as before. The decree, therefore, did not operate to deprive him of any rights, and the guaranty of the constitution that his property shall not be taken from him without due process of law was not violated.

The plaintiff seeks to make the executors individually liable upon the ground that money in the hands of one person to which another is entitled may be recovered in a common-law action. (*Roberts* v. *Ely*, 113 N. Y. 128; *Hovey* v. *Elliot*, 118 id. 124.) But this principle has no application to the case of an executor having funds for distribution belonging to the testator's estate. He owed no active duty to the plaintiff beyond that involved in the faithful administration of his trust. There is no law which authorized or required him to pay the plaintiff's judgments out of the moneys in his hands. His full duty was done when he brought the fund intact into the surrogate's court, and, after citing the legatees and next of kin and creditors of the testator, if any, distributed it in accordance with the surrogate's decree. If the plaintiff did not desire to be compelled to follow the fund into the hands of the distributees there were different ways in which he might have protected himself; either by the proper equitable action to establish his lien, or by applying to the surrogate to be made a party to the proceedings for an accounting; or if he was not aware of the decree until after it had been entered, by making a seasonable application to open it so far as it related to the distribution of this fund. He could have filed a caveat with the surrogate, disclosing his interest in the fund, and

requesting to be notified of the proceedings for an accounting whenever they might be had, and it cannot be doubted that the surrogate would have complied with so reasonable a request. In any view of the situation the burden of activity was upon the plaintiff and not upon the executors, and he cannot complain if he is now required to assert whatever claim he may have to the fund against the party to whom, by the judgment of a competent tribunal, it has been transferred.

It has been urged by the respondents' counsel that by the execution of the power of sale the land was converted into personalty and the legal title of the heir was thereby divested and defeated, and that the legal title and estate of the heir failing the lien of the judgment must fall with it. That would necessarily be the result where the heir and the distributee of the proceeds under the will are different persons; but where they are the same person another rule, we think, must prevail. The conversion of the realty into personalty proceeds upon equitable principles. While the change in the quality of the property is made in accordance with the will of the testator, equity requires that the intervening rights of purchasers and lienors shall be protected.

A purchaser from the heir and distributee acquires a good title to the estate in the land before the sale, and to the proceeds after it has been converted. If the heir incumbers his estate in the land by mortgage, the conversion of the pledge into money, which still belongs to him, ought not to be permitted to involve the destruction of the security, and a judgment is a contract of as high a degree of solemnity by means of which he permits a lien to be created upon the land, and is entitled to equal protection. The ownership of the property in both of the forms, which it may assume, is continuous and uninterrupted, and so far as practicable, all the incidents of ownership should be preserved. The stability of property rights should not be unnecessarily disturbed in effecting the transformation. In fact, the conversion may never occur, for it has been repeatedly held that the legatees may elect to take the land instead of the money, in which case the power of .

sale is extinguished, and it has been held that where the heir and legatee conveyed his estate in the land before the power of sale became operative, it was an election on his part to treat the property as realty, which as between him and the grantee becomes final. (*Reed* v. *Underhill,* 12 Barb. 113.)

The judgment must be affirmed, with costs.

All concur.

Judgment affirmed.