MARY BEAVER ET AL., Appellants, v. GEORGE. Ross, SHERIFF, ET AL., Appellees.

**Equitable conversion:** APPLICATION OF DOCTRINE. Equitable conversion is a constructive change in the nature of property by which real estate is regarded as personalty and personal estate is regarded as realty, and is adopted for the purpose of executing trusts; so that it is essential to an application of the doctrine that the property be subject to a trust, or that there be an imperative direction for a conversion.

**Same.** An application of the doctrine of equitable conversion to a devise of real estate does not require that the devise be in terms to executors or trustees; and the fact that a sale of property is postponed until after the death of the testator is not controlling.

**Same.** DEVISE OF REALTY: WHEN CONVERSION TAKES PLACE: EXECUTION SALE OF DEVISEE'S INTEREST. Where the doctrine applies to a devise of realty the conversion takes place at the death of the testator and the interest of the devisee passes as personalty; as where there was a devise to the wife for life, upon her death the property to be sold and a portion set aside for the support of one child, with a division of the remainder among the other children. *Held,* that the interest of the children passed as personalty and was not subject to judgment, or lien, or execution, as for the sale of realty, although there might be an assignment by the devisees of their interest, as by mortgage.

**Fraudulent conveyances:** BURDEN O₁ PROOF. The burden is upon a judgment creditor alleging a fraudulent assignment by the debtor of the fund garnished to show fraud.

*Appeal from Dallas District Court.—*HON. EDMUND
NICHOLS, Judge.

TUESDAY, NOVEMBER 17, 1908.

SUIT to enjoin the sheriff from selling certain real
estate as the property of Jacob H. Beaver. The case was
tried to the court, resulting in a judgment for defendants,
and plaintiffs appeal. *Reversed.*

*Shortley & Kelley,* for appellants.

*White & Clarke,* for appellees.

DEEMER, J.—In November of the year 1898, F. E.
Collins and S. M. Leach obtained judgments against Jacob
H. Beaver, and in January of the year 1899, the Dallas
County Savings Bank also obtained a judgment against
him. These judgments were rendered by the Dallas County
District Court, and were properly made of record and
duly indexed. In July of the year 1899, Israel Beaver
died seised of the real estate in controversy, and by his
will devised a life estate in the property to his wife,
Elizabeth, and then provided that, "at the death of my
wife, Elizabeth Beaver, the real estate and all the personal
property still remaining shall be sold. Of the proceeds of
the sale the sum of twenty-five hundred dollars shall be
set aside and reasonably invested, the income derived from
the same to be devoted to the support and maintenance of
my son James M. Beaver for his life. At his death the
said twenty-five hundred dollars and any accrued interest
to be equally divided among the heirs hereinafter named.
After setting aside of the said sum of twenty-five hundred
dollars, all of the remainder of the proceeds of the said
sale shall be equally divided between my children and
heirs to wit: Jacob H. Beaver, Williard Beaver, Thomas

Beaver, and Mary E. Myers or their children. I hereby appoint Jacob H. Beaver my executor, to carry into effect the provisions of this my last will." The widow died February 28, 1907, and on June 1, 1907, executions were issued upon the aforesaid judgments, which on the same day were levied upon the interest of Jacob H. Beaver in the premises in controversy acquired under the will. On July 1, 1907, Jacob H. Beaver, as executor of the will, was also garnished under these executions. To restrain the sale of the land under the executions, and to clear the title of all clouds resulting therefrom, this action was brought by Mary Beaver, the wife of Jacob H., and by Jacob H., as executor, and it is claimed that Mary Beaver took by assignment from Jacob some time in the year 1899 whatever interest he (Jacob) had in or to the lands in controversy or their proceeds, and that this assignment was verbal and made before the levy upon the land, or the garnishment of the executor. In their answer defendants claim that the interest which Jacob H. Beaver took under the will of his father was real property, and that the lien of their judgments attached thereto immediately upon the death of the father; that the real estate has never been converted into personalty; that, if it had been so converted, their garnishments are superior to the alleged assignment to Mary H. Beaver; and that the assignment, even if one were made, is fraudulent and void, because it was executed with the intent to hinder, delay, and defraud the creditors of Jacob H. Beaver, and especially the defendants, who hold the judgments hitherto mentioned. A demurrer to the answer setting up the facts above recited was overruled, to which ruling exception was taken. These demurrers were bottomed upon the proposition that Jacob H. Beaver had no such interest in the real estate in controversy as was subject to levy or sale. It will be observed that if Jacob H. Beaver took an interest in real estate under the will of his father, and that this interest

was subject to levy and sale, the decree of the trial court is undoubtedly correct, for the lien of the judgments attached immediately upon the death of the father, or, in any event, upon the death of the mother, and the assignment under which plaintiff, Mary Beaver, claims would be junior, and inferior, to the levy of the executions. On the other hand, if the interest which Jacob H. Beaver took under the will is personal in character, the assignment thereof to Mary H. Beaver would be superior to any lien or interest acquired under the levy of the executions, whether by garnishment or otherwise, unless the sheriff or the plaintiffs in execution show that the assignment was fraudulent as to them.

The first question in the case is .the nature of the interest which Jacob H. Beaver took under the will of his father. It will be noticed that no trustees are named in the will in whom the title might vest. A life estate is given the wife, Elizabeth, and it is then provided that the real estate shall be sold, $2,500 of the proceeds set aside for the support and maintenance of one of the children, and the remainder thereof divided among five other children, naming them. Jacob H. Beaver was appointed as executor to carry into effect the provisions of the will. On the one hand, it is contended that Jacob H. Beaver took one-fifth in fee of the land, subject to the life estate of the mother and his proportion of the $2,500 which was to be set aside upon the death of Elizabeth for the use and benefit of James H. Beaver; while, on the other, it is contended that, under the doctrine of equitable conversion, the interest which Jacob H. Beaver took under the will was and is personal in character; that this was assigned to Mary H. Beaver before the levies of any of the executions, and that her right thereto is prior, and superior, to the garnishments.

Equitable conversion is defined as a constructive alteration in the nature of property by which in equity real estate

*1. Equitable conversion: application of doctrine.*

is regarded as personalty or personal estate as realty. It grows out of the old equitable maxim that "Equity regards that done which ought to be done." It has been adopted for the purpose of executing trusts, and it is essential to the application of the doctrine that the property should be subject to a trust or imperative direction for conversion. *Condit v. Bigalow,* 64 N. J. Eq. 504 (54 Atl. 160).

Appellees contend that the doctrine does not apply here for the reasons (1) that no title passed to the executor or other trustees; (2) that the conversion could not take place in any event before the death of the widow; and (3) that no express power of sale is given to the executor. It was quite generally held that there need be no devise in terms to testators, executors, or to trustees in order that the doctrine of equitable conversion may apply. *Ebey v. Adams,* 135 Ill. 80 (25 N. E. 1013, 10 L. R. A. 162). And the fact that the sale is postponed to a time subsequent to the death of the testator is not controlling. *Allen v. Watts,* 98 Ala. 384 (11 South. 646); *Meakings v. Cromwell,* 5 N. Y. 136; *Collier v. Grimesey,* 36 Ohio St. 17; *Mellon v. Reed,* 123 Pa. 1 (15 Atl. 906).

*2. SAME.*

Where there is a postponement of the sale to a time subsequent to testator's death, the courts are in conflict regarding the time when the conversion takes place; some of them holding that it takes place on the testator's death, and that there is no devise of realty, and others that it does not occur until the time arrives when the change should be made. See *High v. Worley,* 33 Ala. 196; *Rumsey v. Durham,* 5 Ind. 71; *Cropley v. Cooper,* 19 Wall. 167 (22 L. Ed. 109); *Hocker v. Gentry,* 3 Metc. (Ky.) 463; *Fairly v. Kline,* 3 N. J. Law, 754 (4 Am. Dec. 414); *Underwood v. Curtis,* 127 N. Y. 523 (28 N. E. 585); *Thomman's Estate,* 161 Pa. 444 (29 Atl. 84); *Ramsey v. Hanlon* (C. C.), 33 Fed. 425. Contra, *Ship-*

*3. SAME: devise of realty: when conversion takes place: execution sale of devisee's interest.*

man v. *Rollins,* 98 N. Y. 311; *Vincent v. Newhouse,* 83
N. Y. 505. Under the doctrine announced by these latter
cases, until the time of sale arrives, the land is treated
as realty; title vesting in the devisees and being subject
to any liens which may be created in the interim. See
*Sayles v. Best,* 140 N. Y. 368 (35 N. E. 636); *Nelson v.
Nelson,* 36 Ind. App. 331 (75 N. E. 679). The Indiana
court is not consistent in its holdings. In the *Rumsey* case
it held that the conversion took place at the time of tes-
tator's death, while in the *Nelson* case it held that during
the interim between his death and the time fixed for the
sale of the land the residuary beneficiary had a vested inter-
est subject to disposition. And in *Simonds v. Harris,* 92
Ind. 505, it is held that this interest is subject to attachment
and sale as real estate. See, as further sustaining this
latter doctrine, *Eneberg v. Carter,* 98 Mo. 647 (12 S. W.
522, 14 Am. St. Rep. 664). The underlying thought
in these cases seems to be that the devisee takes a vested
interest subject to the life estate and the executor's power
of sale. The great weight of authority is in favor of the
proposition that the conversion takes place at the instant
of testator's death, and that all property rights must be
determined as if the conversion had taken place at that
time, and the rights of the parties are adjusted as if the
property were personalty. In cases where the doctrine
applies either by reason of the act of the parties or by
operation of law, the proceeds are regarded as personal
property. In other words, this interest passes as personalty,
and the legatees have no such estate in the land as is sub-
ject to a judgment or lien or to an execution for the sale
of real estate. *Bank v. Paulson,* 57 Neb. 717 (78 N. W.
303); *Loftis v. Glass,* 15 Ark. 680; *Hammond v. Putnam,*
110 Mass. 232; *McClure's Appeal,* 72 Pa. 414; *Allison
v. Wilson,* 13 Serg. & R. (Pa.) 333; *Morrow v. Brenizer,*
2 Rawle (Pa.) 185; *Turner v. Davis,* 41 Ark. 270; *Pais-
ley v. Holzshu,* 83 Md. 325 (34 Atl. 832); *Mellon v.*

*Reed,* 123 Pa. 17 (15 Atl. 906); *Hunter v. Anderson,* 152 Pa. 386 (25 Atl. 538); *Jones v. Caldwell,* 97 Pa. 43; *Chick v. Ives,* 2 Neb. (Unoff.) 879 (90 N. W. 751); *Roland v. Meiler,* 100 Pa. 47; *Evans' Appeal,* 58 Pa. 238. However, there may be an equitable assignment by the devisee of his interest as by mortgage or otherwise. *Walker v. Killian,* 62 S. C. 482 (40 S. E. 887); *Henderson v. Sherman,* 47 Mich. 267 (11 N. W. 153); *Snover v. Squire* (N. J.) 24 Atl. 365; *Allen v. Watts, supra.* Of course, this doctrine can not be extended so far as to defeat the widow of her rights.

In support of the decree of the trial court, it is argued that, as the lands were not devised to the executor or to other trustees in trust, the legal title to the land until actual sale or conversion was in the heirs, among whom was Jacob H. Beaver, and that his legal interest was subject to execution sale, and some cases are cited in support of this doctrine. Chief Justice Gibson answered this contention in *Allison v. Wilson, supra,* in his usual strong and forceful manner in this way:

But, even if this were otherwise, it would not vary the result. Suppose the legal estate to descend, and remain subject, as it undoubtedly would, to the power to sell, it would, doubtless, be bound in the hands of the heir by a judgment against him; but for how much? Surely for just as much as descended to him, which would be all that was not disposed of by the will. The judgment creditor could sell, and the purchaser could obtain, no more than what vested in the debtor as heir. Then, when the estate of the purchaser comes to be divested by a sale in execution of the power under the will, what right has he, in virtue of having owned the descended part of the estate, to the money arising from that part of it which never descended, but passed under the will as a personal bequest? Neither the judgment creditor nor the purchaser, in his stead, is the representative of Lewis Lowman to every intent. It is a maxim that, where two rights meet in the same person, they are to be viewed as if they existed in

different persons. Now, if different persons from Lewis
Lowman, the heirs, were entitled under the will, how could
a judgment creditor of Lewis Lowman claim anything
under the will? Hence it is evident that, by virtue of a
lien on the land of Lewis Lowman, the heirs, his judg-
ment creditor will not be entitled to the personal interest
of Lewis Lowman, the legatee. The argument attempted to
be raised on this ground therefore fails.

This case also answers another suggestion made by
appellee, to the effect that there might perhaps be a recon-
version of the property by agreement, and, in that event,
the judgments would be enforceable. The trial court erred
in holding that the judgments were liens upon the land
devised or any part thereof.

The defendants, however, pleaded a garnishment of
the executor, and plaintiffs, without objection, proceeded
to try the issue tendered by the answer. In this they
pleaded a pretended assignment by Jacob
H. Beaver to the wife, Mary Beaver, one
of the plaintiffs herein, but they averred that
this assignment was fraudulent and made
with intent to hinder and delay them in the collection of
their judgments. This was submitted to the court, and it
made the following order with reference thereto:

4. FRAUDULENT
conveyances:
burden of
proof.

And the court further finds that, by reason of the
garnishment of the said J. H. Beaver as executor of the
estate of the said Israel Beaver, the said execution defend-
ants are entitled to have their said judgments satisfied out
of the proceeds of the sale of said real estate belonging to
the said J. H. Beaver under and by virtue of the provision
of the will of the said Israel Beaver, deceased. It is there-
fore considered and decreed by the court that the said judg-
ments of the said defendants hereinbefore set out be, and the
same are hereby, established as liens upon the interest of
the said J. H. Beaver in the said described real estate from
the date of the death of the said Israel Beaver; and it
is further decreed by the court that said judgments be, and

the same are hereby, established as liens upon the interest of the said J. H. Beaver in the proceeds of the sale of the said described real estate in the hands of the said executor.  And it is further decreed by the court that, upon the sale of the said described real estate be condemned to satisfy the said several judgments, and that they be applied to the payment and discharge of said several judgments, with costs and accruing costs in full or *pro rata* as hereinbefore found and determined.  And it is further decreed that in the event of the failure of the said J. H. Beaver, executor, to sell the said described real estate within a reasonable time after the date of this decree, that the said defendants, upon filing a motion herein showing such failure, shall be entitled to the issuance of a special execution for the sale of the interest of the said J. H. Beaver in said real estate for the satisfaction of the said judgments as hereinbefore found and determined.

Appellants say that this part of the decree is unwarranted because defendants have failed to establish the fraud pleaded by them.  We have gone over the testimony with care, and fail to find any such evidence of fraud as would justify the setting aside of the assignment made by J. H. Beaver to his wife.  The burden was upon the defendants to establish this issue, and, instead of introducing any testimony on their own behalf, they relied exclusively upon that given by the plaintiffs.  Unless we are to hold that at least three witnesses willfully committed perjury, we must conclude that an assignment was made by Jacob H. Beaver to his wife of all interest he had under the will in question in and to his father's property, and that this assignment was in good faith.

In view of this conclusion, it is apparent that the decree rendered by the trial court is erroneous, and it must be, and it is *reversed.*