# Murray's Estate.

*Decedents' estates—Sale of real estate—Price Act—Conversion —Wills.*

1. Where a will gives no power to sell real estate, does not blend realty and personalty in such a way as to show a clear intent to create a fund and bequeath the same as money, and does not disclose an absolute necessity to sell real estate, but after the will is probated, the land is sold under proceedings instituted under the Price Act of April 18, 1853, P. L. 503, the record of which shows the necessary jurisdictional averments and the specific intent to bar contingent and vested remainders and executory devises, the fund created by the sale will be deemed real estate for the purposes of distribution.

2. Where a testator provides: "all the rest and residue of my estate, real, personal and mixed, I direct to be divided into three equal parts or shares," and these parts or shares are separately given to trustees for the respective parties, there is no such blending of realty and personalty as· to convert the real estate into personal estate.

3. Authority given by a will to trustees "to make from · time to time such investments or changes in the investments of the estate and money herein given to them in trust as may become necessary, or they or the survivor of them may deem advisable," does not in itself work a conversion of realty into personalty.

Argued Oct. 17, 1911. Appeal, No. 57, Oct. T., 1911, by James D. Murray, Guardian of James R. Murray, from decree of O. C. Allegheny Co., Oct. T., 1910, No. 58, dismissing exceptions to adjudication in Estate of Anthony S. Murray, Jr., Minor, (now deceased). Before FELL, C. J., BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Reversed.

Exceptions to adjudication. Before MILLER, J.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in sustaining exceptions to adjudication.

*James D. Murray,* with him *George C. Burgwin,* for appellant.—There was no general equitable conversion of her entire residuary estate worked by the terms and provisions of the will of Annie S. Murray: Yerkes v. Yerkes, 200 Pa. 419; Painter v. Painter, 220 Pa. 82; Darlington v. Darlington, 160 Pa. 65.

Nor was there an absolute necessity to sell in order to execute the will now being construed, such that an intention to convert will be implied: Painter v. Painter, 220 Pa. 82; Caldwell v. Snyder, 178 Pa. 420.

There was no such a blending of realty and personalty by Mrs. Murray in her will, as to clearly show that she intended to create a fund out of both real and personal estate and to bequeath the same as money: Perot's App., 102 Pa. 235; Painter v. Painter, 220 Pa. 82.

There was no power in the trustee to sell real estate. Dalrymple's Estate, 215 Pa. 367; Sill v. Blaney, 159 Pa. 264; Darlington v. Darlington, 160 Pa. 65; Sheridan v. Sheridan, 136 Pa. 14; Jones v. Caldwell, 97 Pa. 42.

When the real estate of a minor is sold under the provisions of the Act of April 18, 1853, P. L. 503, 3 Pepper and Lewis's Digest, (2nd Ed.,) Col. 6413 to 6429, followed by his death while yet in his minority the fund resulting from the sale retains the characteristic of realty and so descend to his heirs.  Holmes' App., 53 Pa. 339.

*Harvey A. Miller,* for appellee, cited Darlington v. Darlington, 160 Pa. 65; Ramsey v. Ramsey, 226 Pa. 249; Battenfeld v. Kline, 228 Pa. 91.

OPINION BY MR. JUSTICE MESTREZAT, February 5, 1912:

Mrs. Annie S. Murray died August 12, 1904, seised of certain real estate situate in the City of Pittsburgh. By her will she devised one-third of the residue of her

estate to her son, Anthony S. Murray and her son-in-law, Edward A. Jackson, as trustees in trust to pay the income "to my son Anthony S. Murray for and during the term of his natural life and from and immediately after his death I give said residue of said share absolutely to such child or children as he may have living at the time of his death and the descendant or descendants of any deceased child or children then living," with the proviso that if her son, Anthony S. Murray, left no child or descendant living at the time of his death, then to go to her two daughters absolutely. The testatrix made like general provisions as to the two remaining shares of the residue, for her two daughters and their descendants. She did not direct her real estate to be sold, and gave no express authority to her trustee to sell, but in the fifth paragraph of her will provided as follows: "I give to my said trustees and the survivor of them, the power to make from time to time, such investments or changes in the investments of the estates and moneys herein given to them in trust as may become necessary or they or the survivor of them may deem advisable."

Anthony S. Murray, the trustee and life tenant of the undivided one-third of the estate, died on July 11, 1907, leaving to survive him a son, William N. Murray, by his first wife, and Anthony S. Murray, Jr. and James R. Murray, sons by his second wife, both minors, residents of the city of Baltimore, Maryland, residing with their mother, Eva Murray, his second wife. James D. Murray, Esq., of Pittsburgh, Pennsylvania was appointed guardian of the minors.

After notice to all parties in interest and to a trustee appointed to represent all contingent interests in posse, the surviving trustee was authorized by the orphans' court to sell the real estate therein described. The proceedings were taken under and in strict compliance with the Act of April 18, 1853, known as the Price Act, and the necessary jurisdictional averments

were set forth in the petition, as was also the specific intent to bar contingent and vested remainders and executory devises. The proceeds of sale were distributed by the orphans' court which decreed to the guardian of Anthony S. Murray, Jr., one-ninth thereof which is included in the account of the Guardian and now being distributed in this proceeding.

Anthony S. Murray, Jr., minor, died on May 27, 1910, intestate, unmarried and without issue, leaving to survive him his mother, Eva Murray, his brother of the full blood, James R. Murray, and his brother of the half blood, William N. Murray.

As stated by the learned Judge of the orphans' court, if the fund now is of the nature of realty, the half brother, William N. Murray is excluded from the distribution; if personalty, under the laws of Maryland, the domicile of the minor, he shares in his half brother's estate; if personalty, distributable under the laws of Pennsylvania, the distributee is his mother.

The learned judge of the orphans' court filed an adjudication holding that the fund in the hands of the guardian must be distributed as realty. He said, inter alia: "It was the trust estate as a whole with all its limitations, including possible interests of persons unborn, that was before the court for sale; a divestiture of the interest and title of all parties interested, whether in being or in expectancy, could be, and was brought about only by the proceedings under the Act of 1853. * * * * * * The proceeding being under the Act of 1853, the provisions of the sixth and seventh sections fix the character of the fund, viz., the purchase money shall in all respects be substituted for the land sold, shall be held and applied as the estate sold had been held, the course of descent shall not be changed by reason of such sale, as respects persons who are not of competent ability to dispose of it. * * * The death of Anthony S. Murray, Sr., vested an absolute estate in a portion of the third of the residue, de-

vised under the will of Annie S. Murray, in Anthony S. Murray, Jr. As land of this minor it was sold under an act positively fixing the character of the proceeds; so it continued, and passed as such, Eckert's Estate, 5 W. N. C. 451, on his death during his minority to those under the intestate law entitled thereto, 'for the purpose of preserving the inheritable quality of the estate :' Wentz's Appeal, 126 Pa. 541."

To this adjudication, W. N. Murray, brother of the half blood of the decedent, filed exceptions, alleging that the court erred in finding that Mrs. Murray had left no directions and gave no authority in express terms to her trustees for the sale of the real estate; and further that the real estate having been sold before the death of Anthony S. Murray, Jr., the court should have held that the fund was personalty and distributed it as such. In the opinion sustaining the exceptions, the learned court says: "It is now contended that by the terms of Mrs. Murray's will and the sales made for the purpose of carrying out its provisions, conversion has in fact taken place." He sustained the exceptions on the ground that the Price Act under which the sales were made could not prevail against the will of the testatrix, if, by the terms thereof, or the exercise of the power contained therein conversion had actually taken place.

It will be observed that the proceeds of the sale of real estate in the hands of the guardian and now being distributed were raised by a sale made by the trustee under the Price Act and, as stated by the learned orphans' court judge, for the purpose of barring contingent and vested remainders and executory devises liable to open and let in after-born children so as to give the purchaser an indefeasible title. By the express provisions of that act the purchase money is substituted for the land sold, and is to be held and applied as real estate.

Aside from the fifth paragraph, did the will of Mrs.

Murray work an equitable conversion of her residuary estate? As said by Chief Justice Sterrett in Darlington v. Darlington, 160 Pa. 65, 70: "To work a conversion of real estate into personalty, there must be either (a) a positive direction to sell; or (b) an absolute necessity to sell in order to execute the will; or (c) such a blending of realty and personalty by the testator, in his will, as to clearly show that he intended to create a fund out of both real and personal estate, and to bequeath the same as money." It is clear that there is no positive direction to sell contained in Mrs. Murray's will. It is equally certain, we think, that there is no absolute necessity to sell in order to execute the instrument. After the direction to pay her debts and funeral expenses and making certain specific bequests, she "gives and disposes" of her residuary estate in three equal parts or shares. She gives one of these shares to trustees in trust to receive and collect the income and pay the same to her son, Anthony S. Murray, during his natural life, and from and immediately thereafter she gives the share absolutely to his children. This is the share now being distributed. The other two shares were given to trustees for her two daughters and their descendants with provisions similar to the gift to her son, Anthony. There is nothing in these provisions of the will that requires a sale in order to carry out the intention of the testator in the distribution of the residue of her estate. If, for instance, it was all real estate, the parties would hold it together and either party could institute partition proceedings, as we have frequently held. If the property was personalty, they could divide it, or, if they desired, sell it as a whole. If, as is a fact, the property was partly real and partly personal estate the same disposition could be made of it by the parties. There was therefore no necessity to sell in order to execute the will.

There is nothing to support the contention that there was such a blending of the realty and personalty as to

clearly show that the testatrix intended to create a fund out of both real and personal estate and to bequeath the same as money. There is not a single provision in the will which indicates an intention on the part of the testatrix to convert her real and personal property into money and to divide it among the distributees as such. The property is given in the form in which it was at the time the will was executed. "All the rest and residue of my estate, real, personal and mixed, I direct to be divided into three equal parts or shares," is the language of the will. These "parts or shares" are separately given to trustees for the respective parties. There was certainly no intention on the part of the testatrix, as disclosed by this language, to dispose of the residue of her estate as money. On the contrary, it is an absolute disposition of the property in its existing form, and was to be taken and held as such by the beneficiaries. "The blending of real and personal estate by a testator in his will," says the Court in Perot's Appeal, 102 Pa. 235, 256, "is not of much significance unless it clearly appears that he intended thereby to create a fund raised out of both real and personal estate, and to bequeath said fund as money." Here the testatrix directed that the residue of her property, not the proceeds or money arising from the sale thereof, should be divided into three equal parts, and that the several parts be held by the trustees for the respective beneficiaries. Each of these three shares vested in the trustees for the respective beneficiaries thereof, and not the entire residue as a blended fund of realty and personalty to be held by the trustees as one fund. The testatrix did not devise her residuary estate to the trustees as a whole, but one-third thereof to the trustees of each of the beneficiaries to whom each of the three parts were given.

The power contained in the fifth paragraph of the will did not work an equitable conversion of the real estate. That is too plain, we think, for argument. The

authority there conferred was simply for the purpose of administering the three trust estates. The trustees were given authority "to make from time to time such investments or changes in the investments of the estate and moneys herein given to them in trust as may become necessary or they or the survivor of them may deem advisable." There is not even an intimation in this language that the trustees were empowered to sell the real estate as a whole or the three interests therein separately for the purpose of distribution. The language clearly indicates that the purpose was to enable the trustees to deal with the trust estates in the most advantageous way for the cestui que trusts. None of the sales were made before the death of Anthony S. Murray, the life tenant. None of the sales were made by the trustees by virtue of the authority conferred in the fifth paragraph of the will. The sales were made by a trustee appointed by the orphans' court, and, as we have seen, under the provisions of the Price Act. His authority came from the orphans' court and not from the will. These facts are clearly disclosed by the petitions presented to the court and by the court's decrees confirming the sales. They also appear by the account which the trustee filed. In discussing the Price Act and the effect of the sale of a minor's real estate under it, this Court said in Holmes' Appeal, 53 Pa. 339, 342: "The sale was not made for the purpose of raising money for him, (the minor). Before making the order, the Court was satisfied that the change from land to money substituted for the land, would be best for his interest, and it was that which moved the Court to make the order. We must therefore hold that this change did not change the character in which the substitute is to pass to those entitled. It must pass as land."

Ramsey v. Ramsey, 226 Pa. 249, does not rule this case. The facts of that case clearly disclose an intention to convert the property and distribute it as

money. The court said: "He (testator) blends the real estate with the personal and divides the total into shares. In express terms he makes the price of the home farm a part of that total, and directs that the price is to be deducted from the share of the party to whom it is given."

We are of opinion that the proceeds of sale of the realty retain their character as real estate, and should be awarded as such.

The decree is reversed and distribution is directed to be made in accordance with the views set forth in this opinion.