IN RE ESTATE OF GRENVILLE M. DODGE.

*Ewing & Voorhees, Frost & Towers,* and *Clark, Byers & Brunk,* for Eleanor Dodge Pusey and Anne Dodge, appellants.

*Tinley, Mitchell, Ross & Mitchell,* for Grenville D. Montgomery and Council Bluffs Savings Bank, Trustees, appellees.

*P. C. Rasmussen,* for City of Council Bluffs, appellee.

*George H. Mayne,* for Norwich University, appellee.

*George S. Wright,* for Lettie D. Montgomery, Grenville D. Montgomery, Elizabeth H. Montgomery, Elinor Montgomery Ellsworth, and Robert L. Montgomery, appellees.

ALBERT, C. J.—Major General Grenville M. Dodge died in the city of Council Bluffs on the 4th day of January, 1916, leaving an estate worth approximately $3,000,000. His wife,  Annie Dodge, died on September 3, 1916, and his sister, Julia D. Beard, one of the beneficiaries under his will, died about a year prior to the commencement of this action; hence we are not concerned as to the rights of either the wife or the sister.

The assets of General Dodge's estate consisted of large tracts of land in various states, in Saskatchewan, Canada, and in Cuba, together with town properties in the cities of Council

Bluffs, Omaha, Washington, D. C., Quanah, Texas, Denver, Colorado, and Winnipeg, Canada; also nearly 17,000 shares of stock in various corporations; 750 bonds of various kinds and descriptions; notes and mortgages and contracts of sale, representing other investments. The original trustees named in the will qualified, and later were succeeded by the present trustees. These various trustees attempted to carry out the terms of the will, and made distribution of the net assets, as provided in the terms of the will, with the result that the three daughters of General Dodge each received, on an average, about $50,000 a year. As will hereinafter be seen, under the will the property was trusteed; and, in the light of subsequent events, and as we read between the lines of the will, the wisdom of General Dodge in so disposing of his property is evident.

At the time of his decease, there were two outstanding trusts, one known as the "Morgan Jones Trust," and the other as the "Frank Pusey Trust;" but in the making of his will, the value of these trusts was taken into consideration by the testator. The Morgan Jones trust became dry, and the property trusteed thereby was decreed to be a part of the assets of the estate of the deceased. The Frank Pusey trust set aside $125,000, the income from which was payable to the wife of the deceased, and upon her death to the daughter, Anne Dodge, one of the petitioners herein; and this trust is still being carried out.

The will in controversy provides for certain special bequests, covered by the first four paragraphs thereof, and certain other bequests, in event the estate exceeded a certain amount. The portion of the will with which we are most directly concerned commences with Paragraph 8, and reads as follows:

"I give, devise, and bequeath the remainder of my residuary estate, both real and personal, of which I may be seized or possessed or to which I may be in any way entitled at the time of my death, to my nephew, Nathan P. Dodge, Jr., and my son-in-law, Frank S. Pusey, as joint tenants and not as tenants in common, and to their successors and assigns to their own use, for the purpose herein expressed, but in trust, nevertheless, to collect, receive, convert and get in my residuary real estate, and out of the proceeds to pay all my just debts and my funeral and testamentary expenses and the many legacies hereinbefore given, and to invest and re-invest the balance of said proceeds in

income-bearing real estate or in bonds or mortgages or in some other equally safe paying securities and generally to manage my residuary estate and to do all things necessary and proper for the maintenance and preservation thereof, and out of the net income thereof to apply first, to pay my sister, Julia D. Beard, during her life, two thousand dollars per annum. Second, to pay one third of the balance of such income each year to the use of my wife during her life, and two thirds to my three daughters, share and share alike, during their lives, and if my wife, or any of my said daughters shall have died prior to the application of such net income, then her or their shares, respectively, shall be applied to the said trustee to the use of her, or their issue who may then be living, said issue taking by representation, *per stirpes* and not *per capita,* the share of such deceased daughter, or if such deceased daughter or daughters shall leave no issue, living at the time of such application, then the share of such deceased daughter or daughters shall go to my then surviving daughter or daughters, share and share alike, and to the lawful issue of such daughter or daughters, by representation, *per stirpes.* In case of my son-in-law, Frank S. Pusey, surviving my daughter, Ella D. Pusey, and that they were living together at the time of her death as man and wife, then her share, if no living issue survive her, shall go to her husband, Frank S. Pusey, during his life only. The annuities, bequests and provisions herein made for my wife or children or their issue or other persons shall not be subject to any charge, lien, assignment or other incumbrance and shall not in any manner be anticipated and the person who shall be entitled thereto shall not have power in any manner to subject the same to any charge, lien or assignment or other incumbrance, and shall not in any manner be anticipated and the person who shall be entitled thereto shall not have power in any manner to subject the same to any charge, lien or assignment or other incumbrance, and shall not in any manner anticipate the same. And any attempted charge, lien, assignment or other incumbrance or other disposition thereof, shall be utterly void and the same shall not in any manner be subject to or liable to for the debts, defaults, incumbrance or other liabilities of the person or persons who shall be entitled thereto, or by the husband, wife or other relative of such person or persons; but the same shall at all times be kept free and unin-

cumbered and paid over only at the regular time and only to the persons entitled to the same under the provisions hereof for the sole and explicit use of such persons to the end that the same may be enjoyed by such persons, respectively, as a provision for them and them only.

"10. The value of the residuary estate at the date of my death, shall be determined by the executors and trustees of this will, according to its reasonable and fair value, and shall include the two trusts made by me, known as the Morgan Jones Trust, dated February 28, 1894, and the Frank S. Pusey Trust, dated January 30, 1894, and their determination of such value in writing, signed by them, shall be final and binding upon all parties; and their determination, also, of the amount of net income in any year or years shall be likewise final and binding upon all parties and for the purpose of enabling my said trustees to carry out the bequests and trusts hereby created and declared, I give them or their successors or their successor, full power and authority to sell and convert, either at public or private sale and upon such terms as may seem to them best, any portion or all of my real estate, and convert the proceeds into income-bearing real estate or into personal estate and to invest and re-invest all of my personal estate, and to do all things necessary and proper for the care and management of my estate to the end that it may be preserved and made most useful to those whom I wish to benefit hereby, and I declare that no trustee herein shall be liable for the execution of these trusts except for his willful neglect or default.

"11. The said trustees and their successors shall hold the said residuary estate on the trust that on the expiration of twenty-one years from the date of the death of the surviving of my two youngest grandchildren living at the time of my death, or if there be but one grandchild living at the time of my death, then at the expiration of twenty-one years from the date of the death of said grandchild, or there be no grandchild living at the time of my death, then at the expiration of twenty-one years from the date of my death, that thereupon all my residuary estate, real and personal, after satisfying the foregoing several provisions hereof according to their respective terms, tenor and effect, shall be divided by the trustee or trustees and distributed, transferred and paid over, first, one half to my wife and daugh-

ters then living, share and share alike and to their issue or heirs by direct descent; the heirs by direct descent of any deceased daughter shall take by representation, *per stirpes* and not *per capita*, the share of such deceased daughter; if there be none such living, then to my living lawful heirs, share and share alike; second, one fourth to Norwich University, Vermont; third, one fourth to the city of Council Bluffs, Iowa, the net yearly income of which is to be used under the direction of the mayor and common council for the relief of needy, indigent officers and soldiers of the late Civil and Spanish Wars and railway employees living in Council Bluffs, and for the relief of the needy descendants of such officers, enlisted men and railway employees and for the support of hospitals and organized charities in Council Bluffs. It is not intended hereby to contravene the law of Iowa, the state of my domicile, or the law of any other state where any of my real estate is situated, and if such a law shall not permit the property to be held in trust for the period above given, then the trustees shall observe such law and the above provision is modified accordingly.''

In this estate, as in all estates of a similar character, on investigation it was found by the trustees that there were certain assets that were practically worthless, and other assets, both real and personal property, which did not produce an income, although they may have had some value.

It is the claim of the appellants that, under the terms of this will, an equitable conversion resulted; and second, that, this being true, the applicants are entitled to have all of this property considered as equitably converted, and that the net income in which they are to share should be considered as increased by the legal rate of interest collected, according to the value of said property had it been converted, as they claim it should have been.

The first question, therefore, is whether or not General Dodge, by the terms of his will, directed the trustees to convert all of the property into interest-producing property, thereby working an equitable conversion. The district court held to the contrary, and with his decision we agree. In reaching this conclusion, we call to our aid certain well settled rules in the construction of wills:

(1) If possible, every clause and word in a will should be

given meaning. The duty of the court is to determine what the real desire and intention of the testator were, and if possible, to avoid defeating such intention; and this intention, when so found, is absolutely controlling. See *Iimas v. Neidt,* 101 Iowa 348; *Law v. Douglass,* 107 Iowa 606; *Roskrow v. Jewell,* 154 Iowa 634; *McTigue v. Ettienne,* 155 Iowa 450; *Williams v. Williams,* 157 Iowa 621; *Elberts v. Elberts,* 159 Iowa 332; *Benham v. Turkle,* 173 Iowa 598.

(2) It is the duty of the court, in determining this intention, to, so far as possible, place itself in the position and surroundings of the testator at the time of the making of the will.

The assets of the General Dodge estate represented the accumulations of a very long, busy, and active life. Much of the property held by him had been in his possession for many years. He knew and realized the condition of his assets, and knew generally of the existence of the part of his estate which was worthless or nonproducing; and when he made this will, he made it with this knowledge, and, of course, must have taken such condition into consideration at the time he executed the will. It is apparent from the terms of this will that the testator lacked confidence in the immediate beneficiaries to handle an estate of this magnitude. Whether it be because of a feeling on his part that it would be dissipated, or whether he felt that he must have assurance that his beneficiaries would have a comfortable and fixed income during their lives, is not quite certain; but it is certain from the terms of the will that this income was not to be anticipated, and could not be incumbered, thus satisfying him that the ones near and dear to him would be sure of a comfortable income during their lives. Previous litigation shows that at least a part of the beneficiaries were not satisfied with the large income they were receiving, but wanted more; and that is the contention and ultimate purpose of the appellants in this case.

Another thing that must be remembered in the consideration of this case is that there are certain residuary beneficiaries herein to whom the decedent gave the *corpus* of his estate, and their interests must also be protected, as well as the interests of the claimants herein. It is quite apparent that, with this situation, the intention of the testator to deprive these residuary

legatees of any part of the *corpus* of his estate ought to be clear, satisfactory, and convincing, before such a construction should be placed upon the will. As throwing light on this proposition, see 2 Perry on Trusts and Trustees (6th Ed.), Sections 548, 549; *Hite's Devisees v. Hite's Executor*, 93 Ky. 257 (20 S. W. 778); *Martin v. Kimball*, 86 N. J. Eq. 10 (96 Atl. 565) ; *Mills v. Michigan Tr. Co.*, 124 Mich. 244 (82 N. W. 1046) ; *Gibson v. Bott*, 7 Ves. Jr. 89; *Taylor v. Clark*, 1 Hare 161 (66 Eng. Rep. 990).

As we turn to the question directly at hand, the question first arises: What is an equitable conversion?

In the case of *Beaver v. Ross*, 140 Iowa 154, 157, we defined equitable conversion as follows:

"Equitable conversion is defined as a constructive alteration in the nature of property, by which, in equity, real estate is regarded as personalty, or personal estate as realty. It grows out of the old equitable maxim that 'Equity regards that done which ought to be done.' It has been adopted for the purpose of executing trusts, and it is essential to the application of the doctrine that the property should be subject to a trust or imperative direction for conversion."

This definition corresponds with the general definition on this subject. See 13 Corpus Juris 852; 6 Ruling Case Law 1065.

This doctrine is a fiction of the law, instituted for the purpose of carrying out the intention of the grantor. It does not, of course, result in an act of physically changing the property, but such transmutation is considered to exist, in the eyes of an equity court, for that purpose and intent. The rule, as we find it in the books applies, however, to only one of two conditions: that is, such conversion is applied only where it is a question of considering personal property as real property, or real property as personal property. No cases have been called to our attention, and we have found none in our search in this case, where such doctrine has ever been applied to a change of personal property into other personal property. Without referring to all of the Iowa cases on this subject, in the case of *In re Estate of Sanford*, 188 Iowa 833, we reviewed this situation, quoting from *Darlington v. Darlington*, 160 Pa. St. 65, and our former case of *Hanson v. Hanson*, 149 Iowa 82, as follows:

" ' "To work a conversion of real estate into personalty,

there must be either (a) a positive direction to sell; (b) an absolute necessity to sell, in order to execute the will; or (c) such a blending of realty and personalty by the testator in his will as to clearly show that he intended to create a fund out of both real and personal estate, and to bequeath the same as money. In the first, the intention to convert is expressed; in the latter two, it is implied. A bare power of sale, like a discretionary power given in a will, does not work a conversion, until exercised." Again, it has been said, in effect, that: "Equitable conversion arises from an express, clear, and imperative direction, or from a necessary implication of such express direction. The question of conversion is one of intention, and the question is, Is it the testator's intent to have his real estate converted into personalty immediately upon his death?" ' "

Later in the case we said:

"If, on the other hand, such absolute, imperative necessity existed, then the intention of the testator to work an equitable conversion of the real estate will be implied" (citing our former holdings and the general rule from other states).

The question we have before us, therefore, is an interpretation of this will under the rules laid down in the above-entitled case. The most material part thereof, as affecting this question, is as follows:

"I give, devise and bequeath the remainder of my residuary estate, both real and personal, * * * to my nephew, Nathan P. Dodge, Jr., and my son-in-law, Frank S. Pusey * * * to their own use for the purposes herein expressed, but in trust nevertheless, to collect, receive, convert and get in my residuary personal estate, and at their discretion to sell and convert my residuary real estate, and out of the proceeds to pay all my just debts and my funeral and testamentary expenses and the many legacies hereinbefore given, and to invest and reinvest the balance of said proceeds in income-bearing real estate or in bonds or mortgages or in some other equally safe paying securities and generally to manage my residuary estate and to do all things necessary and proper for the maintenance and preservation thereof, and out of the net income thereof to apply," etc.

Later, in Paragraph 10, we find the following:

"And for the purpose of enabling my trustees to carry out the bequests and trusts herein created and declared, I give them * * * full power and authority to sell and convert, either at public or private sale and upon such terms as may seem to them best, any portion or all of my real estate, and convert the proceeds into income-bearing real estate or into personal estate and to invest and reinvest all of my personal estate, and to do all things necessary and proper for the care and management of my estate to the end that it may be preserved and made most useful to those whom I wish to benefit thereby."

According to the former paragraphs of the will quoted, this net income was to be divided, share and share alike, among the three daughters of General Dodge. This is the limit of their interest in this estate. From a careful reading of the above quotation from this will, the most that can be said on this question is that power is conferred upon the trustees to sell and convert any of this property, whether real or personal, and to invest or reinvest the same. In terms there is no direction, nor do we find one by implication, to these trustees to sell and convert any of this property. Under the first ground required to make an equitable conversion, as laid down in the *Sanford* case, supra, there would be no equitable conversion, because not only is there a lack of direction to the trustees to sell and convert, but much less is there any "positive direction" to sell.

The applicants insist, however, that the words used in the will are a positive direction to sell, under the authority of *Boland v. Tiernay*, 118 Iowa 59. In that case the words were "And I desire my executor to dispose of the same, and invest the proceeds," etc.; and we there held that it was an express direction, and its performance obligatory. A comparison of the provisions of that will and the will in the instant case will very readily show the distinction between the two. In the *Boland* case, there is a direction to dispose of the property and invest the proceeds. No such provision exists in the Dodge will. There is nothing in the cases of *Beaver v. Ross*, supra, *Shillinglaw v. Peterson*, 184 Iowa 276, *Condit v. Bigalow*, 64 N. J. Eq. 504 (54 Atl. 160), or any of the other authorities cited by the appellants, supporting the construction they seek to put upon this will on the question of a positive direction to sell. Of course, we are committed to the doctrine in this state that, where there is a

positive direction to sell and convert, or to sell and divide the proceeds, an equitable conversion will arise. *In re Will of Miller*, 128 Iowa 612; *Shillinglaw v. Peterson*, supra; *In re Estate of Mount*, 189 Iowa 279.

As to the second ground, to wit, an absolute necessity to sell, in order to execute the will, there is no showing whatever in the record, as we view it, of any necessity to sell, such as there was in the *Sanford* case. Each and every term of the will can be carried out in its fullest extent, without a sale of the property.

The only proposition left, therefore, on which the doctrine of equitable conversion could be applied to this case is the third ground specified in the *Sanford* case: to wit, such a blending of realty and personalty by the testator in his will as to clearly show that he intended to create a fund out of both real and personal estate, and to bequeath the same as money.

We do not feel that the applicants have brought themselves within the requirements of this rule. In the first place, if we should consider the personal property and the real estate as a fund, it is not bequeathed to these applicants; hence there could be no equitable conversion. In the second place, if the will is taken by its four corners, it is apparent that it was not the intention of the testator that the daughters should have any of this fund, whether it was to be considered as a joint fund or whether it was to be considered as personal property and real estate separately. In no event, under the terms of this will, did the testator intend that the daughters should receive any of the *corpus* of the estate.

Incidentally it is to be remembered that the presumption is against the application of the theory of equitable conversion. In *In re Estate of Sanford*, supra, in which we cited *Vanuxem's Estate*, 212 Pa. St. 315 (61 Atl. 876), we said:

" 'The question of conversion is one of intention, and the question is, Is it the testator's intent to have his real estate converted into personalty immediately upon his death?' "

Applying this rule to the will before us, we can find nothing to indicate that the testator had such intention. In fact, the wording of the will itself forbids any such conclusion. Further than this, it may be said that the question of the sale of the real

estate was left wholly to the discretion of the trustees. This is an added reason for our conclusion that the testator had no such intention.

A mere failure of the testator to distinguish between realty and personalty in directing the division of his estate does not constitute a blending of realty and personalty, authorizing an inference of intent to convert. *Murray's Estate,* 234 Pa. St. 520 (83 Atl. 473); *Dunshee v. Dunshee,* 234 Pa. St. 550 (83 Atl. 422); *Westervelt v. Mahony,* 56 Misc. Rep. 409 (106 N. Y. Supp. 637).

If we advert for a moment, at this point, to a consideration of the terms of the will, it is apparent that, under the power given these trustees, they might have sold all of the personal property, and they then had the option to reinvest the same in real estate or other personal property. There is no direction whatever that, when the personal property was sold, it must be invested in real estate. It might be reinvested in other personal property. As to the sale of the real estate, it is equally true that there was no requirement of the trustees that the proceeds should be reinvested in personal property. They might, if they saw fit, sell the real estate and reinvest in other real estate. The only requirement in this respect is that it should be income-producing property; and, were there an absolute direction to the trustees to so proceed, we would have serious doubts whether an equitable conversion would arise, under such circumstances and the terms of this will.

We cannot conclude from a perusal of the terms of this will that it was the intent of the testator to blend this personalty and realty into a fund in money for the purpose of distribution. Rather, the will itself shows that the intent of the testator was that the *corpus* of the estate might be changed from personalty to realty, or from realty to personalty, as occasion demanded, and that, at the death of the last of the three daughters, the *corpus* of the estate was to pass to the residuary legatees. We do not think that the testator had the intention of creating a fund of both his real and personal estate and of bequeathing the same as money. In fact, so far as these applicants are concerned, they were to receive nothing from the *corpus* of this estate, under the terms of the will.

The question is raised in the case as to the admissibility of a

letter, or several letters, written by the attorneys for the trustees to said trustees, expressing their opinion as to the law in the construction of this will. Such letters were not admissible in evidence in this case, as no litigant is bound by what his lawyer may say in a letter to him as to the lawyer's opinion of the matters involved.

Claim is also made that, because of a finding made by the district court in previous litigation between these parties, the same should be held as *res adjudicata* in this case. With this we do not agree. It is well known that it is not an infrequent occurrence that a court may reach a right decision and give a wrong reason therefor. Expressions which the court made as a reason for its findings, so far as we know, have never been held to be the basis of a *res adjudicata*.

Without further elaboration, it is the opinion of this court that the decision of the district court was right. We find nothing in the case that would warrant the application of the doctrine of equitable conversion to this estate; and, as the applicants' action is based wholly on that doctrine, and we find that such doctrine does not apply, it necessarily follows that the claimants must fail in their action.—*Affirmed.*

STEVENS, DE GRAFF, MORLING, and WAGNER, JJ., concur.