EDWIN BRICKSON et al., Plaintiffs, Appellants, J. P. WILTGEN, Plaintiff, Appellee, v. KATIE SCHWEBACH et al., Defendants, Cross-petitioners, JAMES SCHWEBACH et al., Cross-defendants, Appellees.

No. 42819.

JUNE 21, 1935.

Diamond & Jory, for appellants.

Charles B. Hoeven, for appellee Wiltgen.

Van Oosterhout & Kolyn, for other appellees.

RICHARDS, J.—This case originated as an action in equity brought by plaintiffs seeking the appointment of a trustee of real estate. The issues became such that the only question necessary to be considered on this appeal is whether, by reason of the terms of the will of John Schwebach, there resulted an equitable conversion of certain of decedent's real estate into personalty. The will, aside from attestation by witnesses, is in the following words:

"Granville, Iowa, July 18, 1911

"I, John Schwebach, of Sioux County, Iowa, being of full age and sound mind and memory make this my last will and testament. After the payment of my just debts, I give, devise and bequeath my estate and property as follows:

"I bequeath to my wife, Katie Schwebach, all the personal property I die possessed of. Also she shall receive Three Hundred Dollars per year during her lifetime out of the rents of the real property I die possessed of, and free use of house and lots I own in Granville, Iowa, during her life time. The remainder of the rents derived from the rents from the real property I die possessed of, after paying my said wife $300.00 annually and the payment of the taxes on said real estate and the keeping in repair and paying the insurance on all the improvements on said real estate, shall annually be divided equally among my children. The real estate I die possessed of shall not be sold until after the death of my said wife. After her death it may be sold and the proceeds divided equally among my children.

"It is my will that my son Nicholas T. Schwebach shall, so long as he farms the place in a good manner and pays the rent annually promptly remain as tenant of the lands I die possessed

of and pay a rental per acre of fifty cents less than the average rent paid for like farms in Granville, Iowa, vicinity.

"I appoint my sons J. P. Schwebach and N. T. Schwebach as executors of this will and they shall not be required to give bonds to exceed $1000.00.

"In witness whereof J have signed, published and declared this instrument as my last will, at Granville, Iowa, on this 18th day of July, 1911.

"John Schwebach."

Appellants contend the court erred in holding there was such equitable conversion. Appellees say the will manifests a clear intention that what testator's children were to receive was cash, representing equal proportionate shares in the sale price of the real estate, and that accordingly the law implies an immediate conversion in equity of all of his estate into personal property for the purpose of administration.

"Equitable conversion is defined as a constructive alteration in the nature of property by which in equity real estate is regarded as personalty or personal estate as realty. * * * It has been adopted for the purpose of executing trusts, and it is essential to the application of the doctrine that the property should be subject to a trust or imperative direction for conversion. Condit v. Bigalow, 64 N. J. Eq. 504, 54 A. 160." Beaver v. Ross, 140 Iowa 154, 118 N. W. 287, 289, 20 L. R. A. (N. S.) 65, 17 Ann. Cas. 640.

In Hanson v. Hanson, 149 Iowa 82, 127 N. W. 1032, the frequently quoted rule is laid down, that, to work a conversion there must be (a) a positive direction to sell, or (b) an absolute necessity to sell in order to execute the will, or (c) such a blending of realty and personalty by the testator as to clearly show he intended to create a fund out of both real and personal estate, and to bequeath the same as money.

"Again, it has been said in effect that: 'Equitable conversion arises from an express, clear, and imperative direction, or from a necessary implication of such express direction.' The question of conversion is one of intention, and the question is, is it the testator's intent to have his real estate converted into personalty immediately upon his death?" (Citing cases.) Hanson v. Hanson, supra. See, also, In re Sanford's Estate, 188 Iowa 833, 175 N. W. 506, 508.

In the Sanford case, supra, in considering the alleged necessity of applying in that case the doctrine we are considering, the court reaffirmed the rule laid down in earlier cases, saying, "Unless, however, an absolute imperative necessity to sell the real estate, or some part thereof, in order to carry out the terms and provisions of the will is shown, an equitable conversion did not result." It should also be in mind that the presumption is against the application of the theory of equitable conversion. In re Estate of Dodge, 207 Iowa 374, 223 N. W. 106; Hanson v. Hanson, supra.

Applying to the will before us, the rule in the Hanson case, supra, we eliminate from consideration any (a) positive direction to sell, as we find in the will no such positive direction, and eliminate consideration of any (c) such blending of realty and personalty as to clearly show testator intended to create a fund out of both real and personal estate and to bequeath the same as money, same being eliminated because the personal estate passed to the widow alone by absolute bequest. There is left to consider only the question whether there is necessarily implied in the will (b) an absolute necessity to sell the real estate in question in order to execute the will.

Appellees would draw such implication from the following part of the instrument:

"The real estate I die possessed of shall not be sold until after the death of my said wife. After her death it may be sold and the proceeds divided equally among my children."

Appellees say that the quoted words constitute a positive and necessary direction that the real estate be sold, after the widow's death, and that a fund thereby be created to be divided among the heirs. Appellees' deduction therefrom is that testator created an absolute necessity to sell the real estate in order to execute the will, thereby working an equitable conversion.

We cannot follow appellees to their conclusion. We are not able to find that testator intended to create an absolute necessity of sale of the real estate, in order to execute the will. It is our task, following the accepted rules of construction, to try to ascertain what testator really intended by the words he used. In so doing, the two sentences quoted, on which appellees lay stress, should not be disassociated, but should be considered together. This is because these two sentences appear to be inclusive of all testator's expres-

sions upon one of the objects he desired to attain. This particular object was the making it a certainty that the land should not be sold during the lifetime of his wife. After expressing in the first sentence his intention to attain this objective, he then added the words, "After her death it may be sold and the proceeds divided equally among my children." It would appear to us that the second sentence was added with the thought and intention in decedent's mind, either to make more certain, by another expression, that it was "after her death" that the land might be sold, or to make a mere permissive statement to clarify the preceding sentence, and to indicate definitely that testator intended no prohibition of sale after the death of the wife.

Testator's language was purely permissive. He said "may" not "must". We find nothing in the context that would warrant attaching to the word "may", as used, an imperative meaning. Appellees argue that the word "may" should be construed as having the meaning of the word "must", because, as appellees say, there would otherwise be no devise of the remainder interest in the land to the children. While they do not so state, we presume appellees have in mind the rule of construction that favors, under certain circumstances, that interpretation of a will that will not result in a partial intestacy. This argument is hardly pertinent to the issue, because the only matter we determine on this appeal is negative in character, namely, that the will did not imply an absolute necessity to sell the land in order to execute the will. There is no issue as to what estate in remainder fell to the heirs under the terms of the will. In connection with appellees' proposition, it is proper to bear in mind the circumstances under which the will was drafted. It is evident that the children as remaindermen in the will are the identical persons who would inherit the remainder. This fact, of course, was known to testator, and weakens in this case the force of the rule of construction that would avoid partial intestacy, even in case the rule has any application on account of a resulting partial intestacy, a question not before us. There is nothing in the will inconsistent with the idea that testator provided for the objects he desired to attain, content that the remainder should go to his children under the laws of descent. For the reasons above, we do not find in this case such cogency in the rule of interpretation relied on by appellees as to warrant its subverting the evident lack of intention on the part of testator to work an equitable conversion.

Another argument of appellees may be stated as follows: The will provides for the receiving of $300 of the annual rentals by the widow and the sharing by the children of the remainder of the rentals after payment of taxes, repairs, and insurance, during the widow's life; appellees say from this there arises the implication that testator intended there should be some trustee to take possession of the real estate and administer this life estate; from this assumption appellees conclude that the testator created a trust, and by this reasoning, appellees, having established (in thought) a trust, urge that an equitable conversion to enable the trust to function must have been testator's intention. We cannot find in the terms of the will that this life estate was essentially different from any other estate for life, and of course such an estate carries with it the right in the beneficiaries to have the possession and use of the estate in their own right. The imposition of a trusteeship was not in our opinion in any way implied.

This case is reversed.—Reversed.

ANDERSON, C. J., and ALBERT, PARSONS, DONEGAN, and HAMILTON, JJ., concur.