# Ginsberg Estate

*William C. Ferguson, Jr., Simon Lenson* and *Max Palitz,* for exceptants.

*Michael Edelman,* contra.

LEFEVER, J., November 15, 1963.—Before us for disposition are: (1) Exceptions to the readjudication of Judge Shoyer in the above entitled estate; (2) petition by the exceptants requesting this court to grant leave nunc pro tunc to the register of wills to issue letters of administration to H. Durston Saylor, 2nd, in the Estate of Mollie Ginsberg, deceased; and (3) petition of H. Durston Saylor, 2nd, requesting this court to grant leave *nunc pro tunc* to the register of wills to issue letters of administration to Martin H. Yusem in the Estate of Bella Ginsberg, deceased. The petitions were filed with the court at the regular motion list on November 1, 1963, *subsequent to the argument on the exceptions.*

Any request for nunc pro tunc relief raises the question of the propriety and validity of the procedures previously used. Hence, the filing of the above mentioned petitions made it necessary for us to reexamine the entire record in this case. This has revealed fatal defects in the procedure followed by the exceptants.

Testator died on June 25, 1921, leaving a will. Therein he gave a life interest in premises 109 and 111 South Street, Philadelphia, to his daughter, Bella Ginsberg, with remainder to her issue and, in default of issue, to his wife, Mollie Ginsberg, in fee.

On February 11, 1924, Judge Gest signed a decree which provided: "the court being of the opinion that the property sold will be to the interest and advantage of the minor, Bella Ginsberg, and of all parties in interest", appointed Isaac Ginsberg trustee to sell premises 109 and 111 South Street, Philadelphia, each "for

the sum of $6,000, of which $3,000 shall be represented by a first mortgage . . .", and directed the trustee to invest the proceeds and "pay the interest thereon as it shall accrue to the tenant for life until the estate for life shall have terminated, and shall then pay over the principal sum to the persons entitled to such remainder."

In 1932 and 1933, these mortgages became delinquent. Trustee foreclosed the mortgage on one property and took title thereto. Trustee took over the other property as mortgagee in possession. He collected some rents, paid taxes and repairs and otherwise managed, or helped manage, these properties until his death.

Bella Ginsberg died intestate and without issue on July 2, 1936. Mollie Ginsberg died intestate on April 13, 1939. Isaac Ginsberg died on March 3, 1959.

Exceptants' first court action of any kind in these estates was begun on July 13, 1960, long after Bella and Mollie were dead and more than one year after Isaac had died. On that date, exceptants Benjamin Ginsberg, Goldie Ginsberg and Anna Ginsberg Sharlip presented to this court a "Petition for Citation Directed to the Personal Representative of Isaac Ginsberg, Trustee, Deceased, to File an Account." The petition averred: (1) That decedent died in 1921 leaving a will upon which letters were granted and; (2) that "your petitioners are parties in interest, being the children of the testator." Other averments followed to the effect that Isaac Ginsberg was appointed a trustee by this court; that until July 1958, "Trustee . . . did collect rents . . ."; that he never accounted for or "distributed any funds to the beneficiaries." Petitioners then prayed for issuance of a citation to show cause why deceased trustee's personal representative should not file an account.

The implication in paragraph 2 of the petition is plain that the petitioners were parties in interest as

*beneficiaries of an express trust* under the terms of testator's will. This was not the situation. The only possible claim, if any, which petitioners had against Isaac Ginsberg, trustee, was as the heirs of Mollie Ginsberg, deceased, who in turn was the sole heir of Bella Ginsberg, deceased, and also the owner of the remainder following Bella's life estate in said real estate. Under the impression from these averments that petitioners, as testator's children, were *beneficiaries of an express trust* and, therefore, prima facie entitled to an accounting, Judge Bolger signed a decree authorizing the issuance of the citation.

The answer filed by respondents did not raise the crucial issue of petitioners' standing in court. It failed to point out what appears in the pending petitions: that the only beneficiaries of the trust were Bella, life tenant, and Mollie, remainderman; that petitioners had at best a derivative right; and that under no circumstances were they *beneficiaries of an express trust.*

The foregoing facts were not presented in the briefs or at the oral argument. As a result, Judge Saylor wrote an opinion for a unanimous court holding that there was a duty upon the *trustee of an express trust* to account fully *to the beneficiaries* thereof. Following this reasoning, the court ordered Isaac's personal representatives to file an account.

An account was duly filed. It was called for audit before Judge Shoyer. Various hearings were held. An adjudication and a readjudication were filed. Exceptions to each were argued before the court en banc.

Not until the last argument did it appear that exceptants were not the proper parties. They have at best derivative rights as heirs at law of Mollie Ginsberg, deceased, who in turn was the sole heir at law of Bella Ginsberg, deceased. Hence, it would appear that the personal representative of a decedent was the proper party to bring action in her name.

It is the usual custom of this court to award real or personal property owing to a decedent to the actual personal representative or "to the personal representative of the deceased when appointed and duly qualified." Awards directed to the heirs of decedent are a matter of *grace*, not of *right*. See Hazel Estate, 23 D. & C. 2d 344, and Noble Estate, 71 D. & C. 183.

It follows that exceptants were not the proper parties to file the petition for a citation directed to accountants to show cause why they should not file an account as to Isaac Ginsberg's administration of the trust until Bella's death, and possibly until Mollie's death. The personal representatives of Bella and Mollie were the proper parties.

Section 302 of the Fiduciaries Act of April 18, 1949, P. L. 512 provides:

"Letters . . . of administration shall not be granted after the expiration of twenty-one years from the decedent's death, *except on the order of the court, upon cause shown*." (Italics supplied.)

Therefore, the proper procedure in this case was for exceptants, the children and grandchildren of Mollie Ginsberg, to have filed a petition with this court for *the issuance of a citation directed to the interested parties*, to show cause why the register of wills should not be authorized to grant letters of administration under section 302 of the Fiduciaries Act of 1949. This statute is practically a recodification of the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 2(b), which in turn stems from section 21 of the Act of March 15, 1832, P. L. 1350.

In Hanbest's Estate, 21 Pa. Superior Ct. 427, 429 and 430, the court held that "The intervention of the court to prevent unnecessary and intrusive issuance of letters of administration long after the decedent's death is quite as necessary . . .

". . . the letters of administration in this case could only have been properly granted pursuant to an order of the orphans' court *upon due cause shown*, . . .

"It involves the exercise of a *discretion which is lodged by the terms of the act in the orphans' court.*" (Italics supplied.)

It is apparent, therefore, that the public policy in Pennsylvania since 1832 has been *not* to permit the grant of letters of administration, *after the expiration of 21 years*, unless *proper cause has been shown to the satisfaction of this court*. This is consistent with the long established doctrine of the law, discussed hereinafter, that there is a time when the right to litigate should cease.

Another fatal defect in exceptants' case is their failure to understand the significance of Judge Gest's decree of February 11, 1924.

This was a decree under the Revised Price Act. It apparently was entered to make possible the sale of properties in which the *minor*, *Bella*, had a life interest. It would seem that the effect of this decree is not to work an equitable conversion, but to continue the purchase money mortgages received in 1924 and the other proceeds of the sale as *real estate* and not as personalty: Murray's Estate, 234 Pa. 520, 527, wherein the court stated: " 'The sale was not made for the purpose of raising money for him, (the minor) . . . We must therefore hold that this change did not change the character in which the substitute is to pass to those entitled. It must pass as land.' " If this be so, when, in 1932 and 1933, the trustee foreclosed one of the properties and took over the other property, as mortgagee in possession, the trust estate continued to remain real property.

When Bella died in 1936, the life estate terminated and the remainder vested absolutely in Mollie. This remainder was real property. Therefore, since this was

prior to the Fiduciaries Act of 1949, this real estate passed directly to the remainderman, without award by this court or delivery of deed by the trustee. A fortiori, there was no need for any transfer by the trustee of title to the real estate and the mortgage to Mollie: Cook's Estate, 5 Dist. R. 119 (opinion by Judge Penrose) ; Murphy v. C.I.T. Corporation, 347 Pa. 591, 595; Hunter's Original Commonplace Book, pages 1308-09. As stated in Sheaff's Estate, 231 Pa. 251, 255, ". . . the title to the real estate in question became vested in the residuary devisees at the death of the widow. The terms of the trust produced a like effect. The trust having terminated, the statute executed the use and the legal estate became vested in the cestui que trustent . . .

"It follows that no formal conveyance from the trustee is required to vest the legal title in the residuary devisees."

Following this reasoning, Isaac Ginsberg's duties as trustee terminated at Bella's death, except possibly for a formal or informal accounting by him to Mollie as to any income received and disbursement made prior to Bella's death. As Judge Shoyer properly concluded in his first adjudication, we may assume from the facts in this case that there was a family settlement agreement as to this between trustee and Mollie, since it appears that trustee was then providing Mollie with money monthly for living expenses and there is a strong inference from the testimony that trustee later paid Mollie's funeral bill. (Certainly petitioners did not pay that funeral bill).

Authority for this appears in Cannon's Estate, 330 Pa. 513, 515, where the court said:

"A family settlement may be presumed on the failure to account, acquiesced in over a long period of time. Family settlements are preferred by the law; Braunschweiger's Estate, 332 Pa. 394, 397. And when such

settlements exist or are presumed to exist, an accounting is unnecessary."

To the same effect are Plummer Estate, 349 Pa. 453, and Hammer Estate, 8 D. & C. 2d 247, affirmed per curiam by the Supreme Court: 389 Pa. 78.

In any event, if Isaac Ginsberg continued to manage the properties after Bella's death in 1936 and after Mollie's death in 1939, he no longer acted as trustee of the trust created by Judge Gest's decree, but either as an agent for Mollie by some arrangement between them, or as a trustee de son tort. The responsibilities, duties and liabilities in such situations are far different from those of a trustee of an express trust. There is no duty to keep the properties in repair or rented. Nor is there liability for the excessive interest on any rentals received which exceptants seek. Nor is there a burden upon an agent or a trustee de son tort to file an account until and unless it is shown that rents were actually received. The burden of proving this rests upon those claiming them. Moreover, in appraising exceptants' fantastic claims for rentals, which allegedly were or should have been collected, we cannot erase from our minds the knowledge and experience of the 1930's, when ownership of any real estate was a liability and a burden, rather than an asset. The credits in the account for payment of delinquent taxes and the testimony of exceptants' real estate expert corroborate this. It is unrealistic to suggest that great profits were derived from the operation of these marginal properties.

It follows that the burden of proof was upon the personal representatives of Bella and Mollie to show: (1) That Isaac had not paid to Bella any income received by him during his life time, nor accounted to her respecting it; (2) that Isaac had not accounted to Mollie and settled with her; and (3) that Isaac had received net rents from the properties subsequent to

Mollie's death, and the authority and responsibility under which he did so. The evidence produced at the hearings before Judge Shoyer indicates that no such records or proof exist.

Therefore, it appears that exceptants are not in position to meet the burden of proof. If this be so, the issuance of the letters of administration in Bella's estate or Mollie's estate might properly be refused. Exceptants argue that the absence of records proves Isaac to be a faithless, dishonest, deceiving fiduciary who took advantage of Mollie's grandchildren who did not know about their rights. But, since exceptants are not in position to meet the burden of proof, there is nothing upon which to base such an inference. In short, the burden of proof is crucial in this case. Exceptants have endeavored to place it upon accountants in the first instance by the improper procedure used by them. This we cannot countenance.

There is a long established principle of law that there is a time when the door should be closed upon litigation. This is particularly true where, as in the instant case, Bella, the life tenant, Mollie, the remainderman, and Isaac, the alleged trustee, are all dead; and the parties during their lives lived in a harmonious, even cordial, relation with each other. Therefore, the law refuses to allow claims or to direct the filing of an account after the lapse of a period of years.

This principle is well set forth by Judge (later Mr. Justice) Ladner in Hartmann's Estate, 38 D. & C. 310, 315 (1940):

". . . claim must fall by reason of unexplained laches; not by reason of the statute of limitations, nor by any equity rule in analogy thereto, but by reason of the long unexplained delay from 1914 up until after the death of testator, . . .

"The burden to explain a long delay is upon the claimant, . . .

"Claimant does not pretend to meet this burden which has grown the greater because the original parties to the transaction are all dead, for equity will not lend its aid to one who has slept upon his rights until the original transaction is obscured by lapse of years and death of parties . . ."

In McGrann v. Allen, 291 Pa. 574, property was conveyed to John Nauman, an attorney, for the purpose of saving as much as possible out of an involved financial transaction. After the closing of the account in 1915, although various persons talked to Nauman about it, no action was brought until after his death in 1924. A bill in equity was then filed to compel Nauman's personal representative to file an account. This was allowed by the lower court but reversed by the Supreme Court which stated, at pages 578 and 580:

"Delay which injures no one will not furnish reason for refusing relief (Selmer v. Smith, [285 Pa. 67]; Bradley v. Jennings, 201 Pa. 473), but when by reason of a failure to exercise due diligence the rights of the parties have been adversely affected by reason of altered circumstances, the contrary is true. The rule applicable in such cases was thus stated by Lord Eldon, in Foster v. Hodgson, 19 Ves. Jr. 180, 185, cited with approval in Stevens v. D., L. & W. R. R. Co., [278 Pa. 284]: 'If there has been that delay or forbearance that makes it not illegal, but inequitable, to demand an account, this court will deny it, and send the plaintiff away without relief. Each case must be controlled by its own peculiar circumstances, but I think it may be laid down as a safe general rule that a decree for an account should be denied in every case where it clearly appears the party seeking it has, by his laches, rendered it impossible for the court to do full justice to both parties, whether the infirmity of the case consists in the death of a party,

loss of evidence or other cause.' As stated by another court (Hammond v. Hopkins, 143 U. S. 224): 'The rule is particularly applicable where the difficulty of doing entire justice arises through the death of the principal participants in the transactions complained of, or of the witness or witnesses, or by reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible.'

"Further, the present bill is not filed against a living trustee, but the executors of his estate are made defendants. His mouth has been closed by death, and the situation as to available proof profoundly altered. Even when there is a right to demand an accounting from the estate of one deceased, reasonably diligent action must be taken."

In Riley v. Boynton Coal Company, 305 Pa. 364, the court sustained dismissal of the bill because of laches, stating, at page 368:

" 'The doctrine is founded on the equity maxim that "equity aids the vigilant, not those who slumber upon their rights." Its object is in general to exact of the complainant fair dealing with his adversary, and the rule was adopted largely because, after great lapse of time, from death of parties, loss of papers, death of witnesses and other causes, there is danger of doing injustice and there can no longer be safe determination of the controversy.' "

See First National Bank v. Lytle Coal Company, 332 Pa. 391, Johnson v. Hobensack, 318 Pa. 305.

Finally, it comes with very poor grace for exceptants, who have so long slept upon their rights, and who have been awarded by Judge Shoyer's readjudication considerably more than the original principal of the trust, created by Judge Gest's decree, to insist upon interest on interest at 6 percent. Moreover, it is in exceedingly bad taste for their counsel to write such a scathing, in-

temperate denunciation of the auditing judge and this court, which has been struggling to reach a proper determination of this stale claim. As appears above, exceptants have failed to follow proper procedure. Moreover, they let the time for filing exceptions to Judge Shoyer's first adjudication pass; yet we permitted them to file exceptions, *nunc pro tunc*. They now ask for further *nunc pro tunc* relief.

In our opinion the auditing judge has been overgenerous in his awards, and we would be constrained to set some of them aside, if they were challenged. However, the personal representatives of Isaac Ginsberg's estate have not filed exceptions, apparently with the desire to terminate this unseemly litigation between members of a close-knit family who apparently lived in harmony prior to Isaac's death. To the same end we, therefore, refrain from sending the case back to the auditing judge for further consideration and for reduction in the amount of the awards.

Accordingly, we enter the following decree:

And now, November 15, 1963, it is ordered and decreed that:

1. The grant of letters of administration to H. Durston Saylor, 2d, in the Estate of Mollie Ginsberg, deceased is hereby vacated;

2. The grant of letters of administration to Martin H. Yusem in the Estate of Bella Ginsberg, deceased, is hereby vacated;

3. The petition for appointment of an administrator nunc pro tunc in the Estate of Mollie Ginsberg, deceased, is hereby denied;

4. The petition for appointment of an administrator nunc pro tunc in the Estate of Bella Ginsberg, deceased, is hereby denied;

5. The exceptions to the readjudication are hereby dismissed;

6. The foregoing are without prejudice to the right to file a petition for citations to show cause why leave should not be granted to the register of wills to grant letters of administration in the Estate of Mollie Ginsberg, deceased, and to file a petition to have the readjudication amended so as to make the awards in favor of the new administrator of Mollie Ginsberg, deceased, if, as and when appointed.